282 So.2d 789 (1973)
J. Gervais DOHMANN, Sr., Plaintiff and Appellee,
v.
Ronald C. RICHARD et al., Defendants and Appellants.
No. 4297.
Court of Appeal of Louisiana, Third Circuit.
September 18, 1973.
*790 McBride & Brewster, by Norman P. Foret, Lafayette, and Lewis & Lewis, by John M. Shaw, Opelousas, for defendantsappellants.
Robert F. Dejean Sr., of Dejean & DeJean, Opelousas, for plaintiff-appellee.
Before FRUGE, SAVOY, and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff-Appellee J. Gervais Dohmann, Sr., a salesman employed by Bordelon Chevrolet, Inc., brought this suit for damages, alleging that he, a pedestrian, was struck by a one-half ton pickup truck being driven by Ronald C. Richard on the parking lot of his employer in Opelousas, Louisiana, on January 29, 1968, at approximately 11:30 A. M. Made defendants were Richard, the latter's employer, Dimmick Supply Company, Incorporated, and the insurer of the truck, State Farm Mutual Automobile Insurance Company. Universal Underwriter's Insurance Company, the workmen's compensation insurance carrier of plaintiff's employer, intervened in the suit to recover the sums paid by it to plaintiff for compensation and medical benefits.
After a trial on the merits, judgment was rendered by the trial court in favor of plaintiff and against all defendants in the sum of $60,401.02, which represented $40,000.00 for loss of earnings, $18,000.00 for physical and mental pain and suffering and mental anguish, and $2,401.02 for medical expenses. The claim of the intervenor in the amount of $6,301.02 was recognized *791 and ordered deducted from the total judgment in favor of plaintiff.
Defendants have appealed devolutively to this court. Plaintiff has neither appealed nor answered defendants' appeal.
Appellants suggest to us that the trial judge erred in three particulars: (1) In finding the defendant Richard negligent; (2) in failing to find plaintiff solely or at least contributorily negligent; and (3) in fixing an award so high as to constitute manifest error.
Bordelon Chevrolet, Inc. operates an automobile sales business and its main building or "garage" is located on the corner of Court and North Streets. The front or eastern side of the building faces Court Street, and the north side faces North Street. To the rear or western side of the building there is a hard surfaced open area which can be entered from North Street and which contains a number of yellow painted parking lanes. The parking lanes run east and west. Between the southwest corner of the main building and the northeast corner of the body shop there is an 18-foot opening which leads to the front used car lot located to the south of the main building and which is used as a one-way exit by vehicles leaving the aforementioned parking area to reach Court Street.
On the day of the accident, defendant Richard, while in the scope and course of his employment with defendant Dimmick, was making deliveries in his employer's 1966 model Chevrolet one-half ton pick-up truck and while so engaged entered the afore-described parking area of Bordelon Chevrolet, Inc., and backed into one of the parking lanes so that the front of his vehicle was pointing generally east. He alighted from his parked vehicle, delivered a package to Bordelon's parts department, and returned to his pickup. After an interval of time, he started the motor and moved out of the parking lane in the general direction of the 18-foot opening referred to, and while the truck was in motion, struck plaintiff who was walking in the same direction.
Plaintiff testified that he emerged from the main office and walked up to Richard's parked pick-up truck. The left door was open, and Richard, who was sitting behind the driver's wheel, was talking to George H. Burleigh, another salesman for Bordelon, who was standing at the left of the truck near the open door. Plaintiff asked Burleigh a question about the price of a particular vehicle which had been traded in, secured a response, and walked toward the west, or rear of the parked truck. He went completely around the rear, and over to the right side of the truck, and after spotting a customer who was waiting for him near the 18-foot opening, began to walk in that easterly direction alongside, but three to four feet on the right of the truck. He walked ahead of the front of the truck, and while so walking was struck by the truck, and rolled along its right side. He apparently got his foot caught at or near the right end of the rear bumper, and was thrown to the ground. Plaintiff testified that defendant Richard "Cut in on me", and denied that he veered to his left or that he ran into the truck.
Although two witnesses, Burleigh and Don Louis Butler, did not see the initial contact between the plaintiff and the truck, they did see plaintiff "spinning" along the right side of the vehicle and eventually falling to the ground. In other particulars they generally corroborated plaintiff's version of the accident.
Defendant Richard testified that he saw plaintiff to the right rear of his pickup. He says plaintiff was generally walking east, but was looking in all directions. Before leaving he testified that he looked to his left then to his right, started the motor, and moved forward. He stated that after starting, "I started cutting to my right". He denies seeing plaintiff at or near his travel lane before the accident happened.
Although the District Judge assigned no reasons therefor, he concluded that the sole *792 cause of the accident was the negligence of the defendant driver, Richard. The circumstances of this accident are purely factual.
As a general rule, findings of fact by the trier thereof, particularly when involving the credibility of witnesses, are entitled to great weight on appeal, and will not be disturbed unless found to be clearly erroneous. We have reviewed the record very carefully, and find that there is ample support to uphold the factual conclusions herein concerning the sole cause of the accident.
It is established in our jurisprudence that a vehicular accident occurring on other than a public thoroughfare is governed by the general tort law of our state. Nevertheless the provisions of the Highway Regulatory Act (LSA R.S. 32:1 et seq.) are of persuasive value in determining the degree of care expected of a motorist in the operation of his vehicle. Hinegardner v. Dickey's Potato Chip Company, 205 So.2d 157; writ refused 251 La. 746, 206 So.2d 94; Cheramie v. Pierce, La.App., 261 So.2d 380. Of such value in this case are LSA R.S. 32:103 pertaining to the moving of parked vehicles, and LSA R.S. 32:211 et seq., pertaining to pedestrians rights and duties.
It is evident that the trial judge concluded that while moving from the parked position, and thereafter, defendant Richard was not keeping a proper lookout, failed to ascertain that his movement could be made with reasonable safety, inadvertently failed to observe the plaintiff's position and/or had a monentary lapse of attention in his effort to get out of the parking lot, and struck plaintiff who himself was without fault. In this we find no manifest error.
As a result of the accident plaintiff was thrown to the ground and there is some evidence to the effect that he was rendered unconscious for a period of time. Immediately after the accident he was confined to the Opelousas General Hospital wherein he stayed for some 5 days. He was then discharged so that he could enter a hospital in Baton Rouge for further observations by a neurosurgeon who had performed a disc operation on plaintiff some 12 years prior to this accident. He remained in the Baton Rouge hospital for 4 days, and was returned to his home but some time later he was again confined to an Opelousas hospital by his family physician wherein he remained for approximately three weeks.
From the time of the accident to the time of trial, he was examined and/or treated by Dr. R. Luke Bordelon, an orthopaedic surgeon; Dr. Daniel L. Buller, a surgeon; Dr. S. J. Rozas, a General Practitioner and his family physician; Dr. Joseph M. Edelman, a neurosurgeon; and Dr. William E. McCray, a psychiatrist.
Plaintiff's complaints after the accident were of pain in the left leg, left hip, back, head, neck, and testicles. He was treated conservatively and placed in various types of traction, as it was evident that he received some physical injuries consisting of contusions and sprains, but obviously his physical injuries were not overly serious and should have been of a moderate duration. Accordingly most of the aforementioned doctors who treated him found that his difficulty was not of a significant organic type, but that he had enough difficulty to focus on, and act as, a stimulus for a psychological state. He was finally referred by his family physician to Dr. William E. McCray.
Doctor McCray first saw plaintiff on April 16, 1969, treated him rather extensively with high doses of tranquilizing and antidepressant medication, saw him regularly over a period of months and was of the opinion that plaintiff had developed a psychotic state known as a depression. Although he could not say definitely that the accident was the cause of the psychotic depression, he was emphatic that it was a precipitating factor in the development of the illness. The doctor held no hope for improvement of plaintiff's mental condition *793 even with the medication he had prescribed. He considered him totally unemployable.
The record is replete with testimony from members of his family, neighbors, friends, his former employer, and his family physician, that prior to the accident plaintiff was an outgoing, industrious, hard-working, individual, who was close to his family and friends; but that since the accident he constantly complains of various physical ailments, blackouts, spells, difficulty with memory and concentration, and is very nervous and moody. He wants to be alone at all times, and has no patience, or interest in the outside world. In short, he had a complete personality change. He has lost interest in hunting and outdoor recreation, tending his garden, lawn, etc., all of which he participated in and enjoyed before the accident.
We are satisfied that the record shows that the plaintiff is totally and permanently disabled as a result of the accident sued on herein in his present condition. However, appellants contend that plaintiff has not fulfilled his responsibility to take all reasonable steps to mitigate his injuries and as such his award for damages should be limited or decreased. This they base on plaintiff's refusal to subject himself to electro-shock treatments as recommended by Dr. McCray.
In this connection it is true that Dr. McCray recommended electro-shock treatments and opined that they would in all probability improve plaintiff's condition. The doctor explained to the plaintiff and his family the involvements of receiving such therapy. He indicated that there was some danger in the process although he thought it was minimal as compared to some risks that are prevalent in the administration of certain medicines and surgery. He indicated that the administering of shock treatments results in a convulsion very similar to an epileptic fit, and that the treatment carries with it the risk of fractures and dislocations because of the convulsions resulting therefrom.
The doctor thought that there was an approximate 80% to 90% chance of improvement if plaintiff would take the treatment, although of course, he could not guarantee the results.
It is evident that the plaintiff and his family were extremely frightened of the prospect of electro-shock treatments. In fact it is obvious that the plaintiff himself feigned improvement in his condition as an excuse not to submit himself to such treatments.
Appellants have cited us some cases in our jurisprudence, and correctly so, to the effect that where an injured person unreasonably refuses to minimize his damages by accepting non-dangerous and customary medical treatment which is recommended by his physicians, the damages against a tort feasor may be limited to that which the injured person would have reasonably recovered if he had undergone the recommended treatment. Fossier v. D. H. Holmes Co., 19 La.App. 434, 139 So. 709; Andrus v. Great American Insurance Company, La.App., 161 So.2d 109; Roy v. Robin, La.App., 173 So.2d 222.
The cases cited and others which we have found through our independent research have to do with operations and the administration of regimens of treatment concerning physical injuries. None have to do, nor have we been able to discover any which may be applicable in cases of mental illness and the administration of electro-shock treatment. In the case at bar we are dealing with what is perhaps the most misunderstood field of medicine, i.e. treatment of the mind. Plaintiff is not being asked to have a fractured bone placed in a cast, a hernia repaired, or any other conventional form of surgery. Instead it is proposed that he subject himself to electro-shock, a form of treatment designed to work a change in his personality.
*794 Furthermore we bear in mind that our society has not progressed to a point in which it accepts mental illnesses, and particularly the drastic treatment thereof by such measures as shock therapy, with the same tolerance that it now regards physical surgery or treatment. Accordingly we cannot disregard the effect that such treatment, given the present attitudes of our society, is likely to have on plaintiff's future relations with his peers. In so stating we do not intend to in any way demean the value of such treatments or to question the effectiveness with which they are generally credited within the medical profession, but refer only to the attitudes held towards them by the public at large. As testified to by Dr. McCray the treatment is of undoubted value and benefit in many cases and may very well be so in the case at bar. However, for the reasons given we are not prepared to hold at this time that psychiatric therapy of this sort falls within the spirit, or the letter, of that line of jurisprudence which requires injured persons to mitigate their damages. Accordingly in view of all the facts and circumstances present in this case we are unable to hold that the plaintiff's refusal to submit to the electro-shock therapy is unreasonable.
Plaintiff was 56 years of age at the time of the accident, and had been married for 33 years. He is the father of 12 children, six of whom from ages 18 down to 3 years were living with and being supported by him. He has little education, but has always been a good provider for his family over the years. At the time of the accident he had been employed as an automobile salesman by the same employer for some 17 years. His average annual income for the three years prior to the accident was $6,367.49; this does not include the furnishing by his employer of an automobile, gas, oil, maintenance and insurance therefor, plus annual fringe benefits through bonuses which some years amounts to as much as $1,800.00. Considering his age, we can reasonably anticipate that he would have spent at least another 9 years at his job. We find no manifest error in the trial court's award of $40,000.00 for loss of earnings, past and future.
Similarly we find the award for physical and mental pain and suffering and mental anguish in the amount of $18,000.00 to be within the discretionary powers of the district court. La.C.C. Art. 1934(3); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Miller v. Thomas, 258 La. 285, 246 So.2d 16.
Finally, the record substantiates the award for medical expenses.
For the above and foregoing reasons the judgment of the district court is affirmed.
Affirmed.