385 So.2d 1176 (1979)
Brenda PISCIOTTA, wife of/and Joseph Pisciotta
v.
ALLSTATE INSURANCE COMPANY and R. B. Coleman.
No. 64915.
Supreme Court of Louisiana.
November 21, 1979.
Dissenting Opinion December 14, 1979.
On Rehearing June 3, 1980.
*1177 James A. Babst, Chaffe, McCall, Phillips, Toler & Sarpy, Russell M. Cornelius, Normann & Normann, New Orleans, for defendants-respondents.
Marvin C. Grodsky, New Orleans, for plaintiffs-applicants.
DENNIS, Justice.[*]
This personal injury suit was brought by plaintiff, Brenda Pisciotta, who was injured when suspended ceiling panels fell on her during her part-time employment at a Sears store. The trial court rendered judgment against a renovation contractor, its insurer and three Sears executive employees, awarding her $35,000 in general damages, essentially for a herniated disc, and $44,441.00 for a 20% diminution of her earning capacity. The court of appeal vacated the judgment against the Sears executives and reduced the award to $15,000 without specifying the injuries for which it compensated. We reverse in part and affirm in part. After reviewing the evidence, we conclude that the trial judge did not commit reversible error by finding that (1) Brenda Pisciotta sustained a herniated disc caused by the falling ceiling panels; (2) The Sears executives were guilty of negligence proximately causing the accident; (3) The plaintiffs were entitled to an award of $35,000 in general damages, primarily for her herniated disc. However, we further conclude that the trial judge erred manifestly in awarding damages of $44,441.00 on the basis of a finding that Brenda Pisciotta had suffered a 20% diminution in her earning capacity as a result of the accident.
The accident occurred at a Sears store in Jefferson Parish where Brenda Pisciotta was working part-time in the catalog sales *1178 department, on October 1, 1975. An employee of a renovation contractor, Gulf Best, caused some ceiling panels to fall on Pisciotta. Three of Sears' local managerial employees, R. B. Coleman, William Laughmiller and Lang Eddins, had approved Gulf Best's pursuit of its contract work during working hours and in close proximity to the catalog department. Pisciotta was seen immediately by the company doctor, to whom she complained only of an injured finger. She continued to work regularly on a part-time basis, but complained of back pains to a fellow employee. Six weeks after the accident she returned to the company doctor complaining of back pains. He treated her with conservative measures at irregular intervals until February 25, 1976, at which time he referred her to an orthopedist because of the persistence of her pain. During the next few months, Pisciotta was seen and treated by two orthopedic surgeons and a neurological surgeon.
Upon trial of the case the district judge found that the Gulf Best employees and the Sears executives were guilty of negligence which proximately caused Pisciotta's injuries. In his written reasons for judgment he made the following findings:
"The panels, of which one of the type is in evidence, were of plastic `egg-crate' type that lie loose in a metal frame. This frame is itself attached to the surrounding walls, or, in this case, a wall and a valence constructed for that purpose. One of these walls or sections of valence had previously been removed to permit extending the length of the entire structure. At that end, the metal gridwork apparently hung free, temporarily unattached.
"Defendant Gulf Best's employee William A. Doyle testified, quite candidly, that he was himself actively working in the area wherein the new valence, ceiling and counter were being installed immediately adjacent to the older structures to which these would be connected, that his activities consisted of hammering, aligning the new, contiguous valence which had been `shimmed' to a tight fit against the old, installing 2' by 4' boards between the valence and the rear wall, that approximately ten Sears employees worked in the pre-existing section immediately adjacent, that the loose panels could have been removed prior to construction but were not. Any of his above-described activities were sufficient to cause the mere ½ to ¾ inch dislodgement of the tract holding the ceiling panels that would suffice, according to his testimony, to cause the panels to fall out.
"In fact, the accident did occur during his above-described labor and in his full view, Mr. Doyle describing four to six such panels falling upon plaintiff.
"After this accident, but not before, some additional panels were removed to prevent a repetition of the occurrence.
"The motion of the pre-existing valence as Mr. Doyle was manipulating the contiguous and touching new section of valence is also described as simultaneous with the sound of the fall of the panels by the Sears employee-manager of the catalog department, Andrew Pederson, an eye-witness.
"The preponderance of evidence, then, clearly establishes Gulf Best's poor and unnecessarily hazardous operating practices as negligence, and this negligence as the cause of the ceiling panel fall.
"Next, the Court turns to plaintiff's allegations of negligence on the part of certain Sears supervisory employees.
"* * *
"The circumstances described do not comport with the statute's and the Court's notion of `a safe place to work.'
"Mr. R. B. Coleman personally knew or should have known of this non-performance or mal-performance (of the obligation to furnish a safe place to work) so as to bring him within the ambit of culpable persons delineated in Canter. He admitted having overall responsibility for safety, visiting the catalog department during the construction `three or four times a week,' during which time the catalog department employees were working there, that he ordered no changes but, in retrospect, *1179 now feels he would, if the same situation were to occur, see that the ceiling panels were removed before permitting the work to take place. He participated in the formulation of the plan to do the work, the manner in which it was to be done, its being done during store working hours, and its being done without temporary relocation of the catalog department and its employees.
"The latter (Mr. Coleman's participation) was attested to by William Laughmiller and, in part, by Lang Eddins who testified that only Mr. Coleman would have authority to close the area or relocate the department, and directed this not be done.
"Mr. Laughmiller's testimony further revealed that he visited the work site at which the conditions described prevailed every day. He knew that employees of Sears were working in an area adjacent to the new construction. He knew that the new valence was being attached to the old valence and that catalog department employees were working directly under the egg crate ceiling panels which were in the track system connected to the old valence. Even though he claimed that he had delegated his responsibilities for enforcing OSHA requirements to Messrs. Eddins and Menne for this particular renovation project, he admitted he was not rid of his overall responsibility for the safety of Sears employees in the catalog department. In fact, he states that he visited the renovation site daily to make sure that the work was being done in a proper fashion. He admitted being a participant in the initial planning conference with Coleman and Eddins at which the decision resulting in the employees working in the hazardous circumstances were made.
"Lang Eddins considered himself in charge of this project although he reported to Laughmiller and Coleman. He admits that he had the authority to stop unsafe practices but did not do so because he did not consider the situation to be an unsafe one. The Court disagrees.
"Accordingly the Court finds each of these three defendants, R. B. Coleman, William Laughmiller and Lang Eddins, in violation of the duties owed plaintiff, Brenda Pisciotta, by them and further finds these violations to have proximately caused her accident."
Accordingly, the district judge rendered judgment for the plaintiffs, Pisciotta and her husband, against Gulf Best, its insurer The Fidelity and Casualty Company of New York, and the three Sears executives. Pisciotta was awarded $35,000 in general damages and $44,441.00 because of a 20% diminution in her earning capacity.
On appeal, the court of appeal modified the judgment by reducing the total award to $15,000 and releasing the Sears executives from liability. The intermediate court found "that there is support in the record for the conclusion that Gulf Best's employees knew or should have known that their work ... could cause one or more of the panels to shake loose ...;" but that, since there had been no similar previous incidents, "there was no reason [for the Sears executives] to believe that this incident would occur." The court of appeal concluded that the district judge abused his discretion in awarding the plaintiffs $35,000 for general damages and $44,441.00 for loss of earning capacity, finding that the plaintiffs had failed to carry their burden of proving either that Pisciotta sustained a herniated disc in the accident or that her earning capacity had been substantially diminished.
The rules of law governing a court of appeal's review of a trier of fact's determination of causation and assessment of damages were stated and discussed exhaustively in Canter v. Koehring, 283 So.2d 716 (La. 1973); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Without setting forth the rules at length, we will consider whether they were properly applied in this case.
The issues are: (1) Did the accident cause Pisciotta to have a herniated disc? (2) Has her earning capacity been diminished by *1180 20%? (3) Were the Sears executives guilty of negligence which proximately caused the accident?
1. Cause of Plaintiff's Herniated Disc
In his written reasons the district judge made the following findings:
"Defendants' contention that the accident is an unlikely cause of Mrs. Pisciotta's rather serious injury is rejected by the Court. Indeed, the testimony of the physicians, particularly that of treating physicians and specialists Dr. Vogel, neurosurgical specialist and Dr. Russel Levy, orthopedic specialist to whom plaintiff was referred by the industrial surgeon of plaintiff's employer, and who hospitalized her, clearly attributed the injurywhich the doctors believed to be and the Court finds to be a C-6 herniated intervertebral discto be caused by the ceiling panel fall or by Mrs. Pisciotta's movements in response to the fall. Defendants offer no evidence of another cause to contravene this."
The evidence fully supports the district judge's findings of fact. The intermediate court was mistaken in concluding that "there is no clear testimony to indicate that plaintiff suffered any back or neck pain referable to the accident until around the time she was referred to Dr. Levy and quit work in April of the following year except for an isolated instance of a complaint in November, approximately six weeks after the accident."
Pisciotta testified that she bent over and threw her arms over her head when she was struck by several falling ceiling panels. According to her testimony she began to have neck pains a few days later. A co-worker, Mrs. Richard, testified that Pisciotta began to complain of neck pains a couple of days after the accident. The company doctor, who was the first to treat Pisciotta, testified that he had no record that she complained of neck or back pain on the day of the accident. However, six weeks after the accident, on November 14, 1975, he saw her again and she complained of "pain of the left trapezius muscle, which is the left side of the neck, and the left parathoracic muscles, which is the left side of the chest." He further testified that "there was some tenderness on left lateral flexion, which is just bending your neck to the left ... [and] there was some tenderness at the base of the left neck." The same doctor saw her three days later and again six days later; he testified that "there was some persistence of the symptoms" and "a slight alteration of the cervical vertebrae that might indicate some spasm of the neck muscles." The company doctor testified that she returned to him on November 24, 1975 and displayed "very questionable minimal numbness of the little finger of the left hand." A week later she was seen again by him and he reported she had "mild tenderness of the trapezius muscle, which is the base of the left neck," but he thought it so minimal that he discharged her from further treatment. Pisciotta returned on February 17, 1976, however, complaining of "pain in the left shoulder and numbness of the left arm and some decreased strength on that side." He saw her a few days later and noted that her pain had migrated to the "left posterior back of the chest, near the rhomboid group of muscles." On her next visit, on February 25, 1976, the doctor referred her to an orthopedic surgeon, Dr. Levy, for evaluation, because "she complained still of pain in that posterior chest." Thus, the record reflects that Pisciotta complained frequently of neck and back pains, beginning shortly after the accident, and continuing through the period of her treatment by the company doctor.
Dr. Levy, an orthopedic surgeon, began treating Pisciotta on March 3, 1976 and last examined her before trial in June, 1976. He testified he initially felt she had a "cervical sprain type of syndrome," but ultimately concluded that she had "a probable disc herniation with a nerve root pinched" which by history he "felt ... was related to the falling ceiling structure." She had constant, and at times, severe, disabling neck pains while under his treatment. He hospitalized her with traction at one point and recommended that she undergo a *1181 myelogram to determine if surgery was advisable. Pisciotta decided against a myelogram, however, and, Doctor Levy testified, they had "more or less a break in the doctor-patient relationship."
Dr. Vogel, a neurological surgeon, first examined Pisciotta on May 25, 1976 and saw her again on June 8, 1976, August 19, 1976, November 16, 1976, February 17, 1977, April 13, 1977, September 1, 1977, and December 29, 1977. She complained to him of cervical, left arm and interscapular pains. Based on the history she gave him and his examinations he diagnosed her condition as a herniated cervical disc caused by the accident of October 1, 1975 when the ceiling panels had fallen on her. Dr. Vogel recommended that she submit to a myelogram and consider surgery, but Pisciotta had not elected to do so at the time of the trial.
Dr. Manale, an orthopedic surgeon, examined Pisciotta once on June 22, 1976. She complained of pain in her neck during certain motions required by the examination. The doctor thought there were two possible causes for her symptoms: either she had "stretched some portions of her brachial plexus, that is, the nerves that come down from the spine in the region of the neck to go down the arm," or that she had been struck by an object in that area. He also testified that it was possible, but unlikely, that she had sustained a herniated disc. The doctor states, however, that he believed her symptoms were caused by her accident on October 1, 1975. Thus, Dr. Manale was the only specialist to express the opinion that Pisciotta did not have a herniated disc.
The trial judge apparently gave greater weight to the testimony of the other orthopedist, Dr. Levy, and the neurological surgeon, Dr. Vogel, because they had treated and examined her on a number of occasions. The finder of fact must have found credible Pisciotta's testimony describing the accident and her pains arising soon afterwards. He evidently found corroboration in the testimony of her co-worker, Mrs. Richard. The trial judge must have been persuaded by the testimony of Doctors Vogel and Levy that often herniated disc symptoms do not manifest themselves until several days after the damaging trauma. The trial judge's decisions in these respects were clearly reasonable.
After reviewing the record, we conclude that there was "evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding," Canter v. Koehring, 283 So.2d 716 (La.1973), of the fact that Pisciotta sustained a herniated disc when she was pelted by the falling panels. "[O]n review the appellate court should not [have] disturb[ed] this factual finding in the absence of manifest error." Id. Furthermore, our consideration of the whole record convinces us "that the record establishes that the finding is not clearly wrong (manifestly erroneous)." Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1979). Finally, since the record does not "clearly reveal that the trier of fact abused its discretion in making its award," Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1977), the district judge's assessment of $35,000 in damages because of the herniated disc injury should not have been disturbed. La.C.C. art. 1934.
2. Effect Upon Plaintiff's Earning Capacity
The district judge found that Pisciotta had sustained a loss of earning capacity in the amount of $44,441.00. The judge based his determination on the testimony and computation of plaintiff's expert economist witness, Dr. Wolfson, who concluded that, if Pisciotta had suffered a 20% loss in her earning capacity, this loss should translate into a present lump sum award of $44,441.00. The court of appeal reversed the trial court's finding, indicating that it lacked an evidentiary basis.
The district judge erred manifestly in accepting the underlying premises that Pisciotta had suffered a 20% loss in her earning capacity. The medical testimony does not support a finding that her ability to earn an income was permanently damaged to this extent. On the contrary, the evidence indicates that after an operation she *1182 would probably be able to return to work and most of her activities. There is some confusion in the record in that Dr. Vogel at one point responded affirmatively to a question: "Is that another way of saying that the patient would remain ten to twenty percent disabled?" However, a reading of Dr. Vogel's testimony immediately preceding this question and a study of his entire testimony lead to but one reasonable conclusion. Dr. Vogel opined that at least eighty or ninety percent of the patient's discomfort should be relieved by treatment, which would probably include an operation. Thus he thought she could continue to have some discomfort following an operation, but he testified several times that she should be able to resume her normal occupation and activities. We therefore agree that the trial court's award should be amended to eliminate any recovery for permanent loss of earning capacity.
Mrs. Pisciotta indicated to Dr. Vogel that she was undecided about whether to submit to the operation. A plaintiff must minimize his damages by submitting to reasonable corrective surgery necessary to eliminate any permanent disability. Donovan v. New Orleans Ry. & Light Co., 132 La. 239, 61 So. 216 (1913); Reeves v. Louisiana and Arkansas Railway Co., 304 So.2d 370 (La.App. 1st Cir. 1974); Dohmann v. Richard, 282 So.2d 789 (La.App. 3d Cir. 1973); Welch v. Ratts, 235 So.2d 422 (La. App. 2d Cir. 1970). A damage award should include the cost of this corrective surgery. Dohmann, supra; Welch, supra. Dr. Vogel testified that the operation would cost approximately $3,000, which includes all hospital and surgical fees. He further stated that Mrs. Pisciotta would not reach maximum medical improvement until one year following the operation. Accordingly, we will amend the judgment below to add $3,000 for the cost of corrective surgery and $3,000 for lost wages during the rehabilitative period.
3. Negligence of Sears Executive Employees
The trial judge found that the employees of the renovation contractor, Gulf Best, were negligent in failing to remove the ceiling panels before attempting to install a new valance alongside an existing valance. Apparently, all threethe frame holding the suspended ceiling panels, the old valance, and the new valancewere hanging from the roof of the building and touched one another at certain points. Essentially, the trier of fact found that it was foreseeable that a mere one-half to three-fourths inch displacement of the track or frame holding the ceiling panels would cause them to fall on the employees working underneath, and that it was apparent that the activity of hammering and jarring necessary to align the new valance flush with the old one created an unreasonable risk of causing such a displacement.
The court of appeal agreed that the Gulf Best employees should have realized the danger but inexplicably found that the Sears executives had no reason to believe that the incident would occur. Our review of the record convinces us otherwise. The evidence fully supports a finding that the Sears executives, who were responsible for both the safety of the Sears employees and the renovation, were or should have been intimately knowledgeable about the physical relationships of the suspended ceiling-valance components. Just as the Gulf Best workers, they should have recognized the unreasonable risk of harm to the employees working under the suspended ceiling components involved in proceeding with the construction during working hours without first removing the ceiling panels.
4. Summary of Damages Awarded
Accordingly, the judgments of the court of appeal and the district court will be amended and recast in our decree to award plaintiffs the following damages:

General damages $ 35,000
Medical expenses incurred 2,831
Earnings lost to date of trial 6,694
Medical expenses related to
 necessary corrective surgery 3,000
Loss of earnings during
 rehabilitation 3,000
 _____
 Total (excluding
 costs and expert
 witness fees) $ 50,525

*1183 Decree

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiffs, Brenda Pisciotta, wife of Joseph Pisciotta, and Joseph Pisciotta, and against defendants Gulf Best Electric Company, The Fidelity and Casualty Company of New York, R. B. Coleman, William Laughmiller, and Lang Eddins, in solido, for the sum of $50,525, together with interest at the legal rate from the date of judicial demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of intervenor, Sears, Roebuck & Company, to such extent as is possible under the terms and provisions of this judgment.
All costs, including those of the expert witnesses, are taxed against Gulf Best Electric Company, The Fidelity and Casualty Company of New York, R. B. Coleman, William Laughmiller, and Lang Eddins, in solido.
REVERSED IN PART, AMENDED IN PART, AFFIRMED IN PART.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
BLANCHE, J., dissents and hands down reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I agree with the majority in all respects except its finding that Sears' executives were guilty of negligence proximately causing the accident. Accordingly, I respectfully concur in part and dissent in part.
BLANCHE, Justice (dissenting).
I respectfully dissent. The record does not support a finding that plaintiff's back injury was in any way connected or caused by the falling of a ceiling panel. The majority opinion relies on the district judge's findings of fact and those findings were criticized by the court of appeal as follows:
"Our review of this record leads us to factual and legal conclusions very much different than the `Reasons for Judgment' contained therein and obliges us to state our appreciation of the facts of this case so that a reviewing court may have the benefit thereof. We conclude that the testimony and exhibits materially contradict the `Reasons for Judgment' and find as follows: ..."
The court of appeal further noted:
"We find great disparity between the record and the `Reasons for Judgment' as we turn to consideration of the issue of damages allegedly incurred by Pisciotta."
The doctor who saw plaintiff immediately following the incident concluded that she had "minor lacerations of the finger, not enough to suture, but merely to put an antibiotic dressing on it, and I don't think we gave her a tetanus shot and I discharged her. We didn't have to see her any further." The accident happened on a Wednesday and plaintiff returned to work on Friday of the same week. She worked steadily thereafter for the balance of October and all of November, December, January, February, March and into April when she quit working because of a doctor's recommendation. This writer's review of the record confirms the observation of the court of appeal that what caused Mrs. Pisciotta's alleged back or neck pains loomed unanswered in the record.
Finally, this writer is at a loss to understand the logic of holding Sears' executive liable to plaintiff just because Gulf Best workers should have recognized there was some danger that a ceiling panel might fall. There is no proof in the record that Sears executives either knew or would have been aware of the purported danger created by Gulf Best employees. After all, if the work being performed by Gulf Best appeared all that dangerous, maybe Mrs. Pisciotta should not have been standing under it.

*1184 ON REHEARING
CALOGERO, Justice.[*]
On original hearing the Court majority reversed the Court of Appeal in part and reinstated portions of the trial court judgment in favor of plaintiff, a part-time Sears employee injured when suspended ceiling panels fell on her at work. We reinstated and/or awarded a total of $50,525.00 of an $88,966.00 trial court award, reduced by the Court of Appeal to $15,000.00, upon finding appropriate each element of the trial court award except the $44,441.00 in lost future earning capacity. We also reversed the part of the Court of Appeal judgment absolving the three Sears executives of liability and reinstated the trial court judgment against them.
Plaintiffs and three defendants, Sears executives R. B. Coleman, William Laughmiller, and Lang Eddins, were granted rehearings upon their applications. Plaintiffs seek reinstatement of the trial court's $44,441.00 award for diminution of future earning capacity. Coleman, Laughmiller, and Eddins claim that they were not negligent and the Court of Appeal was correct in vacating the judgments against them. After reconsidering these issues, we conclude that each of them was properly resolved in the original opinion with one exception, which we discuss herein.
In our earlier opinion, we held that all three of the Sears executives, Coleman, Laughmiller, and Eddins, were guilty of negligence proximately causing plaintiff's accident and thus liable in solido with Gulf Best Electric Company, a co-defendant. Upon reconsideration of this issue we find that only the display manager, Eddins (of the three Sears executives), was guilty of negligence and responsible to plaintiffs for the damages.
The facts, as they pertain to this issue, are as follows: Plaintiff, Brenda Pisciotta, was working part-time in the catalog sales department at the Sears Clearview store in Jefferson Parish. On October 1, 1975, Gulf Best Electric Company, an electrical contracting firm, was in the process of doing some renovation work for Sears, during working hours and in close proximity to the catalog department. During the renovation work, an employee of Gulf Best caused some ceiling panels to fall onto Mrs. Pisciotta, causing her injuries.
In the original opinion we were particularly impressed with the fact that the three Sears executives, Coleman, Laughmiller, and Eddins, had responsibility for the safety of the employees of the store and had approved Gulf Best's plans for the construction. However, as pointed out in the briefs on rehearing, the responsibility for daily on-the-scene safety management of the catalog renovation project was delegated to Eddins under whose immediate supervision the renovation project was carried out. While both Coleman and Laughmiller had general responsibility for the safety of their employees, they had delegated that responsibility, at least for the catalog department and this renovation project, to Eddins, and Eddins did the on-the-scene supervision and reported back to the others.
In the case of Canter v. Koehring Company, 283 So.2d 716 (La.1973) we laid out the following criteria for imposing individual liability on an executive:
"1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
"2. This duty is delegated by the principal or employer to the defendant.
"3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstanceswhether such failure be due to malfeasance, misfeasance, *1185 or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
"4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm." (Emphasis provided.)
In order to determine whether the executives in this case are individually liable to plaintiff under the above criteria we must look at the specific facts involved here.
The principal or employer here, Sears, Roebuck Company, was under a duty to provide its employees with a reasonably safe place to work. R.S. 23:13.[1] In this case, this duty was delegated in part to all three executives named as defendants: Coleman, Laughmiller and Eddins.
Coleman, the store manager, had general administrative responsibility for the entire Sears operation at its Clearview facility. The store employs 700 to 900 people and contains approximately 250,000 square feet of useable space. While Coleman's duties include responsibility for the safety of employees and customers (and toward that end he made daily walking inspections of the store), of necessity, and in accordance with Sears policy, he delegated his responsibility in this area to a number of subordinates for its discharge, including Laughmiller, the operating superintendent or assistant manager of the store.
Laughmiller supervised a work force of over 200 employees and was responsible for several areas of store function besides safety. He had delegated responsibility for daily, on-the-scene safety management to certain department subordinates. As testified to by Coleman and another Sears employee, Pederson, the responsibility for daily, on-the-scene safety management of the catalog renovation project was delegated to Eddins, under whose immediate supervision the renovation project was carried out.
Under the criteria set out in Canter, for a defendant to be liable it must be found that he breached a duty through "personal fault." Canter further provides that "with regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment." Under the above criteria, we simply cannot find that plaintiff's accident was caused through the "personal fault" of either Coleman or Laughmiller. Although both of these executives had general responsibility for the safety of the employees both had delegated these responsibilities to Eddins and there has been no showing that this delegation was without due care. On the other hand, Eddins spent three and four hours per day at the renovation site and had ultimate responsibility for ensuring plaintiff a reasonably safe place to *1186 work. Since the trial court determined that plaintiff's working conditions were not reasonably safe, we conclude that Eddins breached the duty owed plaintiff through his personal fault and is therefore liable in solido with Gulf Best for the injuries she sustained.
For the reasons assigned, we reinstate the original opinion and judgment of this Court except insofar as it casts R. B. Coleman and William Laughmiller for plaintiff's damages and costs.
DENNIS, J., concurs in part and dissents in part, adhering to the opinion on original hearing.
MARCUS and WATSON, JJ., concur in part and dissent in part and assign reasons.
BLANCHE, J., dissents with reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I agree with the majority in all respects except its finding that Lang Eddins was guilty of negligence proximately causing the accident. Accordingly, I respectfully concur in part and dissent in part.
BLANCHE, Justice (dissenting).
I adhere to my original dissent. The court of appeal's excellent review of the evidence shows that the record does not support a judgment in favor of plaintiff.

ON REHEARING
WATSON, Justice, concurring in part and dissenting in part:
The majority is correct in holding on rehearing that Eddins is liable in solido with Gulf Best but that the other two Sears executives are not. However, both on original hearing and on rehearing the majority errs seriously on the issue of diminution of future earning capacity. Even if the trial judge was wrong in the award he made (and it does not appear that he abused his much discretion in that he essentially awarded about $80,000.00 for pain and suffering and future disability from a herniated disc), this court has erred in the other direction by prescribing a very serious operation for Ms. Pisciotta, guaranteeing a perfect result, and allowing loss of wages only during convalescence. Thus, this court cut the award for future disability to $3,000.00, which cannot be justified.
I respectfully concur in part and dissent in part.
NOTES
[*] Chief Judge Paul B. Landry, Retired, participated in this decision as an Associate Justice Ad Hoc.
[*] Honorable Edward A. de la Houssaye, III participated in this decision as an Associate Justice Pro Tempore.
[1] R.S. 23:13 provides:

"Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such with similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect life, health, safety and welfare of such employees. Nothing in this Section shall apply to employment in private domestic service or to agricultural field occupation."