STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-1117

LOTTIE L. GENTRY DODSON

VERSUS

K-MART CORPORATION, ET AL.

**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 198,346
HONORABLE B. DEXTER RYLAND, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

**REVERSED AND RENDERED.**

**Dorwan G. Vizzier**
**Broussard, Bolton, Halcomb & Vizzier**
**P. O. Box 1311**
**Alexandria, LA 71309-1311**
**(318) 487-4589**
**Counsel for Plaintiff/Appellee**
    **Lottie L. Gentry Dodson**

**Jack E. Truitt**
**The Truitt Law Firm**
**251 Highway 21**
**Madisonville, LA 70447**
**(504) 792-1062**
**Counsel for Defendants/Appellants**
**K-Mart Corporation**
**Jeff Frazier**

**Neil C. Abramson**
**Christopher R. Teske**
**Beth E. Abramson**
**Phelps, Dunbar, LLP**
**Suite 200, Canal Place**
**365 Canal Street**
**New Orleans, LA 70130-6534**
**(504) 566-1311**
**Counsel for Defendant/Appellant**
**K-Mart Corporation**

GREMILLION, Judge.

In this case, the defendants, K-Mart Corporation and its employee, Jeffrey Frazier, appeal the judgment of the trial court casting Frazier personally liable and it and Frazier liable in solido for injuries sustained by the plaintiff, Lottie Dodson, following a slip-and-fall accident in a K-Mart store. For the following reasons, we reverse and render.

## FACTUAL AND PROCEDURAL BACKGROUND

Dodson filed suit against K-Mart and Frazier following a slip-and-fall accident in December 1998, at an Alexandria, Louisiana, K-Mart store. Dodson alleged that Frazier, the front-end manager of the store, failed to properly supervise and instruct his employees to dry off wet shopping carts to prevent water from dripping off of the carts onto the floor. As a result, she claims she sustained injuries when she slipped on K-Mart's wet tile flooring.

Following a bench trial, the trial court found K-Mart and Frazier liable "jointly and in solido" to Dodson for $127,616.95. K-Mart now appeals.

## ISSUES

K-Mart assigns as error:

1.  The trial court's judgment finding Frazier personally liable.

2.  The trial court's judgment casting K-Mart and Frazier liable in solido when solidary liability was eliminated by the legislature nearly ten years ago.

## LAW

Appellate review of a question of law is simply a decision as to whether the trial court's decision is legally correct or incorrect. *Jim Walter Homes, Inc. v.*

1

*Jessen,* 98-1685 (La.App. 3 Cir. 3/31/99), 732 So.2d 699. If the trial court's decision was based on its erroneous application of law, its decision is not entitled to deference by the reviewing court. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983). When an appellate court finds that a reversible error of law was made in the lower court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993).

### *Personal Liability*

Coincidentally, we recently addressed this very same issue against a K-Mart employee in *Green v. K-Mart Corp.,* 01-675 (La.App. 3 Cir. 6/18/03), 849 So.2d 814, *reversed on other grounds,* 03-2495 (La. 5/25/04), 874 So.2d 838, where we stated the criteria used to determine personal liability of an employee as set forth in *Canter v. Koehring Co.,* 283 So.2d 716 (La.1973). The criteria are:

1. The principal or employer owes a duty of care to the third person . . . breach of which has caused the damage for which recovery is sought.

2. This duty is delegated by the principal or employer to the defendant.

3. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. **He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.**

*Id.* at 821-22 (emphasis added).

There is no dispute, nor has any party appealed, the trial court's finding that K-Mart breached its duty under La.R.S. 9:2800.6(A), in failing to exercise reasonable care to keep its floor in a reasonably safe condition. Dodson argues that the trial court correctly found Frazier personally liable because he was the front-end manager of the store responsible for ensuring that other employees police the shopping carts, he knew of the procedures K-Mart had in place to dry carts during rainy weather, and he failed to implement, properly supervise, and enforce the procedure. K-Mart, on the other hand, argues that Frazier properly acted within his administrative responsibility.

Frazier testified that he was the Assistant Store Director of the front-end and customer service areas of the K-Mart store. He stated that he was in charge of the layaway department, cash office, main office, check-outs, and service desk. He stated that he directly supervised the utility clerks, who were responsible for handling the shopping carts, and that he was the person that had the overall responsibility for that part of the store. Frazier testified that the utility clerks were to try and towel off wet shopping carts and that the door greeters also sometimes assisted them. He also stated that new hires underwent a specific training program largely dealing with safety. Frazier stated that the employees would have watched a video pertaining to the safety issues surrounding the wet shopping carts. He went on to testify that he was not sure if he was there the day of the accident or if his assistant, Carol Maze, was working.

However, Frazier further testified that he would expect all of the utility clerks and door greeters to use the proper K-Mart procedure pertaining to the

3

shopping carts on any rainy day. Nevertheless, Frazier testified that the utility clerks could not be expected to remove every drop of water or condensation that may be on a cart. He stated that it would be up to the store manager to change the current procedure.

Frazier went on to state that there was no employee who was required on a specific schedule to check the carts to see if they were dry on rainy days. He also stated there was no log or documentation that would reflect if this is done. Frazier testified there were usually four utility clerks working throughout the day who were responsible for keeping the carts dry, as well as for customer and layaway carry-outs. Frazier also stated that safety meetings were held about three times a week in various areas of the store at which employees were present. Frazier testified that he instructed employees in the rainy day procedures, enforced them when he was on duty, and that his assistant and supervisors were instructed in the procedures. Finally, Frazier testified he had no personal knowledge of Dodson's fall and only became aware of it when he was served with the petition almost a year later.

Mel Carey, the safety coordinator for the K-Mart store at the time of the accident, testified that his job involved the implementation of the company's safety policies as well as ensuring they were being adhered to. Carey testified that he was aware of the job duties of utility clerks, although he did not supervise those employees. He stated that although it was not his responsibility to have the utility clerks secure the shopping carts, he became involved when a safety issue came into play. Carey testified that there were no particular employees scheduled to inspect specific areas of the store at any given time. Instead, he stated that all employees

4

were responsible for the safety of themselves and the customers alike. He further stated that no one in particular was tasked with inspecting the shopping carts to determine whether or not they were dripping, even on rainy days.

Carey went on to testify that he regularly checked the floors to determine if there were any spills. Over the two-year period he worked at the store, he stated that he had seen employees drying off wet shopping carts once or twice, but that it was not a regular practice. Carey also testified that he was a member of the safety team, which was to keep employees vigilant in regard to safety issues in the store. He stated that in the two years he was at the K-Mart store he was not made aware of a general problem caused by wet shopping carts dripping on the floor and creating a hazard. He again testified that it was every employee's job to inspect for potential hazards. He stated he was not aware of any directive that the utility clerks were required to dry wet carts.

Ilene Maison, who was employed at K-Mart as a cashier at the time of the accident, witnessed the accident. She testified as to the weekly safety meetings that were conducted and discussions as to the prevention of slip-and-fall accidents.

Michael LaFears, Jr., a utility clerk at K-Mart since March 1998, testified that he had been working at K-Mart for around eight to nine months at the time of the accident. He stated that his job duties included bringing carts into the store from the parking lot, bagging groceries, and helping in the layaway and customer service departments. LaFears testified that when he was hired another utility clerk trained him as to his job duties. He stated that he did not recall any training from a K-Mart supervisor. He testified that he did not remember any specific instructions about

5

whether or not he should dry off shopping carts on rainy days, but that he just took it upon himself to wipe them when he could. LaFears stated that usually they were too busy to wipe down the carts, but that he had done so on occasion. He further stated that he did not get any instructions from K-Mart people as to specifically how to handle the job of returning the carts on wet days as opposed to dry days.

David Daily, who was the grocery manager at the Alexandria K-Mart, testified that managers had a one-day training procedure concerning the clerks and front-end associates. He worked at the store from 1994 through 1996, until he was injured on the job. Daily testified that he would sometimes be in charge of the front-end, including the utility clerks, when the other managers had time off or were on vacation. Daily was qualified as an expert in the operations and management of retail stores and the supervision and training of managers, supervisors, and employees. He also qualified as an expert in the nature and occurrence of slipping hazards in retail stores and the proper procedure and standard of care required to avoid such hazards and injuries to customers and employees. However, Daily admitted all of his knowledge was through management training programs that any manager-trainee would receive from various retail establishments. He also admitted that he had never testified before, had never been accepted as an expert, and had no specialized knowledge. Daily further testified that there is no standard uniformly recognized in the industry for the areas that he was offered as an expert. It is noted that Daily admitted he was upset at how his former employer, K-Mart, had handled his workers' compensation claim in 1996.

Daily testified that a wet dripping shopping cart is a known hazard to K-Mart, its managers, supervisors, and employees. He stated that in his retail experience, the standard applicable to wet, dripping shopping carts would be for the store manager to ensure that no customer used a wet cart. Daily testified that if a cart is wet it should be placed in an area to dry and, if there are no other carts, then the basket must be manually dried off before the customer is allowed to use it. He stated that the supervisor is supposed to monitor these situations. He further testified that utility clerks are to "bounce" the shopping carts while they are still outside to rid them of any extra water and, if any water remained, to physically dry the cart off. Daily testified that these procedures were in place at the time he worked at the Alexandria K-Mart from March 1995 (when the store opened) to January 1996. He testified that this incident was a breach of industry standard, and that the utility clerks and door greeters breached the standard. However, he stated that if the utility clerks had not been trained in the procedures he discussed, or if their supervisors had not adequately enforced the procedures, then the supervisor breached the standard of care.

Daily further opined that the accident would have been avoided if the procedures had been followed and that a wet shopping cart presented an unreasonable risk of harm to the customer. However, he testified that he did occasionally see people pushing wet carts and that his response was to immediately take the cart away from the customer and make sure they had a dry cart with which to shop. He admitted that his seeing this was due to a "let down" of the proper procedure.

7

On cross-examination, Daily was asked whether an errant wet cart had escaped his rainy day procedure during his thirty-four years in the retail industry. He replied that he could not say, because it would be impossible for him to be everywhere at once and to control every single shopping cart. Thus, he admitted that under his supervision, wet shopping carts had made their way into the store.

After reviewing this testimony we do not find sufficient evidence to hold Frazier personally liable to Dodson. A manager of a retail establishment is not automatically personally liable for injuries that may occur on the premises under his "watch." While Frazier was the front-end manger that included supervision of the utility clerks and door greeters, he was not the personal insurer of Dodson's safety. The testimony evidenced that Frazier was aware of the K-Mart policy regarding wet shopping carts and that the utility clerks were to carry out the procedure. LaFears, the utility clerk that testified, said he knew of the procedure, although he implemented it only when he had free time.

It would be unreasonable to expect Frazier, who is in charge of the cashiers and the check-outs, the layaway department, cash office, main office, service desk, utility clerks, and door greeters to be continuously checking the state of condensation of every shopping cart coming and going in the K-Mart store. We further find a lack of evidence suggesting that Frazier failed to properly supervise the utility clerks considering his myriad responsibilities in the store. In fact, it appears that it was Carey's position to constantly police the store for safety concerns. Moreover, weekly safety meetings were held. It is K-Mart's responsibility, not Frazier's, to ensure that there are sufficient employees with enough time to dry off

8

shopping carts.

Dodson argues that Frazier failed to "properly implement and supervise the procedure." However, the testimony was that there was no particular procedure other than for the utility clerks to dry off wet carts when it rained. It was neither Frazier nor LaFears' responsibility to assess the costs versus benefits of hiring more employees to ensure that every cart is dry before it leaves the cart corral. It is K-Mart's responsibility to adequately hire and train enough individuals to effectuate its safety procedures. Having a procedure in place, while admirable, is ineffective if there are inadequate means to carry it out. The testimony is overwhelming that the procedure was to dry off wet carts, that Frazier and his subordinates knew the procedures, and that the utility clerk who testified did not do it regularly because of lack of time. None of these facts impart personal liability on Frazier.

There was absolutely no evidence to suggest that Frazier had anything personally to do with the accident in question through any act of negligence. There was no evidence that he personally saw the wet carts or water dripping on the floor and failed to clean it up or instruct someone else to clean it up. Instead, it appears the employees knew they were supposed to dry off the carts, and failed to do so because of a lack of time. Even Carey stated that he saw people wiping down carts only once or twice; that it was not done on a regular basis. Yet, Carey did not testify that he informed Frazier that the carts were not being dried off nor did he testify that he took any other measures to ensure that the carts were being dried on rainy days.

K-Mart claims the trial court's written reasons for judgment in support that this case should be reversed. Throughout its written reasons for judgment, the

9

trial court addresses Frazier's liability stating (emphasis added):

> The court finds that the actions of the K Mart corporation and of the front end manager, Jeff Frazier, violated duties that were owed to Lottie Dodson on the day of the accident. Therefore, the court finds that K Mart is at fault for the physical injuries and other damages incurred by Lottie Dodson.
>
> . . . .
>
> The failure of the K Mart employees to wipe the carts when they were returned to the store is a failure to exercise reasonable care making K Mart liable for the accident occurring on December 10, 1998.
>
> . . .
>
> [T]he court finds the total fault should be apportioned in this case to K Mart and Jeff Frazier for 35 percent for each . . . . Under Civil Code Article 3520, which provides that an employer is answerable for the damage occasioned by their servants and oversseers [sic], in the exercise of the functions in which they are employed, **K Mart is responsible for the percentage of fault attributed to Jeff Frazier.**[1]
>
> . . . .
>
> Since K Mart has the greater duty concerning the use of wet carts and is the employer of Jeff Frazier, the Court finds that they are responsible for 70 percent of the damages suffered by Lottie Dodson.

The final judgment reads:

> *IT IS ORDERED, ADJUDGED AND DECREED* that there be Judgment herein against the defendants, KMART CORPORATION and JEFF FRAZIER, jointly and insolido, and in favor of plaintiff, LOTTIE L. DODSON.
>
> . . . .
>
> *IT IS FURTHER ORDERED, ADJUDGED AND DECREED* that there be Judgment here in favor of plaintiff, LOTTIE L. DODSON and against defendant, JEFF FRAZIER for legal interest[.]
>
> . . . .

---

[1] The remaining 30 percent of the fault was apportioned to Dodson.

10

***IT IS FURTHER ORDERED, ADJUDGED AND DECREED*** that
there be Judgment herein against the defendants, KMART
CORPORATION and JEFF FRAZIER, jointly and in solido, for all costs
of these proceedings.

We agree with K-Mart that it is difficult to reconcile the trial court's written reasons and its judgment. However, we need not attempt such reconciliation because we find that Frazier is not personally liable to Dodson as he was acting solely in his administrative capacity that day. We further find that K-Mart is solely responsible for the fault apportioned to him.

Dodson cites *Pisciotta v. Allstate Insurance Co.*, 385 So.2d 1176 (La.1979), in support of its position that Frazier knew or should have known of the general non-performance of the utility clerks in wiping down the carts. In *Pisciotta*, three Sears executives were found personally liable for the injuries suffered by the plaintiff when ceiling panels fell on her during a renovation. We find those facts inapposite to the ones at hand. In *Pisciotta*, three managers had approved the renovation work during working hours and in close proximity to where the plaintiff was working. The supreme court found the three managers, who visited the site daily and who had planned the work without relocating the plaintiff's work area, were negligent in that they should have foreseen the risk to its employees and:

> [W]ere or should have been intimately knowledgeable about the physical relationships of the suspended ceiling-valence components. . . . [T]hey should have recognized the unreasonable risk of harm to the employees working under the suspended ceiling components involved in proceeding with the construction during working hours without first removing the ceiling panels.

*Id.* at 1182.

The testimony only reveals that Carey, who was supposed to be actively searching for safety problems, and LaFears, who worked in the department, knew that the carts were not wiped down regularly. We note that it is irrelevant whether or not Frazier knew or should have known that the baskets were not being regularly wiped down and that this issue is not a deciding factor in this case. We find that the breakdown or failure to fully implement an accountable procedure was not shown to be within Frazier's general administrative duties. There was no testimony that it was Frazier's duty to personally implement a log system or personally inspect the baskets on an hourly basis. An overall review of the facts suggests it was K-Mart's responsibility to effectively implement a system to prevent slipping hazards on rainy days.

### *In Solido Liability*

Frazier bears no personal liability for this accident. Therefore, the percentage of fault apportioned to him by the trial court (35%) is apportioned to K-Mart for a total of 70% of the fault or $127,616.95. Because we have found that K-Mart bears the full 70% of the fault for this accident, the trial court's judgment casting Frazier liable in solido to Dodson is vacated.

### CONCLUSION

The judgment of the trial court finding the defendant-appellant, Jeffrey Frazier, personally liable to the plaintiff-appellee, Lottie L. Dodson, is reversed and the judgment casting him and K-Mart liable in solido is vacated. K-Mart corporation is responsible for 70% of the fault of this accident. Costs of this appeal are assessed to the plaintiff, Lottie L. Dodson.

**REVERSED AND RENDERED.**