411 So.2d 507 (1982)
Karl B. UNBEHAGEN
v.
BOLLINGER WORKOVER, INC., et al.
No. 14527.
Court of Appeal of Louisiana, First Circuit.
March 2, 1982.
*508 Joseph L. Waitz, Laurence Best, Huntington B. Downer, Jr., Houma, for plaintiff-appellee Karl B. Unbehagen.
Stephen R. Wilson, Baton Rouge, for defendants-appellants Bollinger Workover, Inc., Admiral Ins. Co.
Before ELLIS, LOTTINGER and PONDER, JJ.
PONDER, Judge.
Defendants, Bollinger Workover, Inc., and Admiral Insurance Company, appealed from the judgment awarding plaintiff, Karl B. Unbehagen, $195,000.00 damages for injuries received in an oilfield accident, complaining only of the $150,000.00 awarded for loss of future earnings. Plaintiff answered the appeal, asserting that the amount should be increased to $521,733.72.
The sole issue, therefore, is the amount awarded for loss of earning capacity. We affirm.
The trial court in transcribed oral reasons carefully analyzed this issue. We adopt and quote this analysis.
"* * * Basically, the most contested issue in this case is a determination of what is an appropriate level of compensation for the loss of earning capacity suffered by Karl Unbehagen. The Louisiana Supreme Court and the appellate courts of the State of Louisiana recognize that loss of future earnings cannot be calculated with absolute certainty and that damages for loss of future earnings are somewhat speculative in character. Robinson v. Graves, 343 So.2d 147 ( [La] 1977). On occasion the Louisiana Supreme Court has disapproved the use of formulas in arriving at an award for loss of future earnings. However, a review of the decisions of the Courts of Appeal, and in particular in the First Circuit, it appears that formulas are strongly relied upon to assist the Court in determining what is fair and equitable in each case. Falcon v. Bigelow-Liptak Corporation, 356 So.2d 507 ([La. App.] 1st Cir., 1977); Edwards v. Sims, 294 So.2d 611 ([La.App.] 4th Cir., 1974). Essentially what a Court must do in a case of this type is to exercise sound judicial discretion and award an amount that, considering all of the facts and circumstances, seems just and fair to both litigants and is not unduly oppressive to either. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968). The following factors are primarily relied upon by the Courts in determining what is fair and equitable in each case: age, life expectancy, work life expectancy, appropriate discount rate (also known as the investment income *509 factor), the annual wage rate increase or productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability, and the inflation factor or decreasing purchasing power of the applicable currency. Rivers v. Schlumberger Well Surveying Corp., 389 So.2d 807 ([La.App.] 3rd Cir., 1980); Polman v. Mohasco Corporation, 371 So.2d 838 ([La.App.] 4th Cir., 1978); Hebert v. Diamond M Company, 385 So.2d 410 ([La.App.] 1st Cir., 1980); Greene v. Wright, 365 So.2d 551 ([La.App.] 1st Cir., 1978); Johnson v. International Insurance Company, 347 So.2d 1279 ([La.App.] 1st Cir., 1977); Edwards v. Sims, supra.
"The evidence adduced at the trial shows that Mr. Unbehagen is 26 years of age, has a life expectancy of 46.1 years and a work life expectancy of 35.7 years.
"In most cases studied the Court applied a discount rate or what is also called an investment income factor to project the present value of loss of future wages. The most often used discount rate is six percent, as set forth in R.S. 47:2405. See Falcon v. Bigelow-Liptak Corporation, supra, and Johnson v. International Insurance Company, supra.
"In this case Dr. Seymour Goodman used a discount rate of eight percent and Dr. Ken Boudreaux used a discount rate of eleven percent. A review of the jurisprudence shows that various Courts have used discount rates ranging from four percent on up to that which is suggested in this case.
"In the instant case Dr. Goodman suggested an annual wage rate increase or productivity level rate of 8.59 percent. Dr. Boudreaux was of the opinion that such a figure was not appropriate in this type of case.
"It appears that the factors of probable future earning capacity and prospects for rehabilitation should be considered in one discussion. The testimony of Erbie `Tiny' Wilson indicates that Karl Unbehagen is presently serving Dowell as a dispatcher being paid 1,780 dollars per month. Since he has been with the Dowell Corporation he has achieved on numerous occasions a superior in the performance of his duties, which ranks him within the top fifteen percent of those employees in his job classification. The testimony of Mr. Wilson indicates to this Court that due to Mr. Unbehagen's work ethic, the esteem within which he is held by his superiors and fellow employees and potential customers for Dowell Corporation that he has excellent chances for advancement with that corporation. I would particularly commend Mr. Unbehagen on the efforts that he has taken to minimize his losses in this case. Even though it was not suggested by his doctor that he return to work, he preferred to do that rather than sit idly by. Even though he was not released to full duty, he attempted to go back to full duty and do the best he could under the circumstances to make money for his family and also to minimize his losses. It is well settled in Louisiana law that there is a duty on the part of a person injured to take reasonable steps to minimize their loss. Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823, (1968) Pisciotta v. Allstate Insurance Company, 385 So.2d 1176 ([La.] 1979); Lawyers Title Insurance Company v. Carey Hodges and Associates, Inc., 358 So.2d 964 ([La.App.] 1st Cir., 1978). It is the opinion of this Court that Mr. Unbehagen went above and beyond that which is required by the law to attempt to minimize his losses in this case by doing everything he could to try and achieve his prior work status. Unfortunately, because of the nature of his injuries he is not able to accomplish that which he wished to do. However, the fact that Mr. Unbehagen made the extraordinary effort that he did in this case points up the fact that he is undoubtedly a very valuable person to the Dowell Corporation and is someone that I feel confident will advance with that firm. The testimony of Gene Bohlkin, a rehabilitation specialist, indicates that Mr. Unbehagen has the potential to be a sales representative or a stock control supervisor with his present skills. Mr. Unbehagen is a high school graduate and is married with a child and a child is on the way. The medical testimony shows *510 clearly that he has lost his capacity to do heavy manual labor, and loss of capacity is compensable, just as loss of earnings. Coco v. Winston Industries, 341 So.2d 332 ([La.] 1977); Folse v. Fakouri, 371 So.2d 1120 ([La.] 1979).
"In determining mathematically by a formula the possible loss of future earning capacity of Karl Unbehagen it is the opinion of this Court that the method most often utilized by the Court has been to determine annual loss of income and multiply this by the work life expectancy and discount this figure by whatever is determined to be appropriate discount rate or rates. The evidence shows that at the time of the accident here in question Mr. Unbehagen was earning ... 1,720 dollars per month and was given the use of a company car for his business and personal purposes, with a company credit card for gasoline, and an expense account for his meals and the meals of his crew and potential customers. At the present time Mr. Unbehagen is earning the sum of $1,780 as a disptacher and does not have the use of a company card, a company credit card, or an expense account. The testimony at the trial indicates that if Mr. Unbehagen had continued to serve as a service supervisor that his present wage level would be 2500 dollars, plus an additional salary bonus per month of 200 dollars, plus the use of the company car and credit card, plus an expense account. Under the holdings of Coco v. Winston Industries and Folse v. Fakouri the proper level of determining monthly or annual loss of wages is to subtract present wages from the wages which the injured person would have been earning had that person continued in his employment at the time of trial. This means that that figure should be calculated by subtracting the 1,780 dollar figure from the 2,700 dollars in salary which Mr. Unbehagen would presently make if he were still in his same job, including the value of his company car, company credit card and expense account. Applying the formulas of the two economists, Dr. Goodman came up with a figure of $521,733.72 and Dr. Boudreaux came up with a figure of $112,344.14. I agree with the jurisprudence that in cases of this type the measure of an appropriate award is not simply determined by a mathematical computation or mechanical formula. It is my opinion that all of the factors that have been previously alluded to must be considered in determining an award that under all facts and circumstances is just and fair to both litigants and not unduly oppressive to either. I consider a significant factor the established fact that Mr. Unbehagen has been permanently deprived of his capacity to perform heavy manual labor. However, this factor must be balanced with the other factor that Mr. Unbehagen is obviously a very valuable employee to the Dowell Corporation who has a great potential for advancement with that corporation. In view of this it is the opinion of this Court that it is probable that with Mr. Unbehagen's abilities that he will further proceed to minimize his losses in the future by advancement within the Dowell Corporation. After analyzing the jurisprudence and all of the facts and circumstances of this case, I wholeheartedly concur with my brothers on the bench that indeed the calculation of what is a fair figure for future loss of earnings is at best speculative in character. After considering all of the factors in this case and the injuries in question, reviewing the jurisprudence, it is my opinion that a fair and reasonable sum for all parties in this litigation is the sum of 150,000 dollars for loss of future wages."
For these reasons, the judgment is affirmed at appellants' costs.
AFFIRMED.