491 So.2d 412 (1986)
Harvey SMITH, Jr.
v.
PORCHE BROTHERS LUMBER AND SUPPLY, INC., CNA Insurance[1] and Eugene Watson.
No. 85 CA 0484.
Court of Appeal of Louisiana, First Circuit.
June 24, 1986.
*413 Baron M. Whipple, Houma, for plaintiff and appellee-Harvey Smith, Jr.
James F. Ryan, New Orleans, for defendants and appellants-Porche Bros. Lumber Co. and CNA Ins. Co. and Eugene Watson.
John L. Lanier, Thibodaux, for defendant-appellee Terrebonne Parish School Board.
Roxie Foster, Baton Rouge, for third party defendant State of La., through the Dept. of Transp. & Development.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
This is a suit for damages arising out of a multi-vehicle collision.

*414 FACTS
On August 30, 1983, a Terrebonne Parish School Board bus broke down in the Houma Intracoastal Tunnel. Several vehicles stopped behind the disabled bus. As plaintiff, Harvey Smith, Jr., entered the tunnel, he observed the congested traffic, applied his brakes, and stopped his vehicle a safe distance behind the car preceding him. Four vehicles, in turn, stopped behind plaintiff.
Eugene Watson, driving a cement truck belonging to his employer Porche Brothers Lumber and Supply, Inc., proceeded into the tunnel, failed to stop, and collided into the rear of the last vehicle. This collision caused a chain reaction and propelled a vehicle owned by Tennessee Gas and Pipeline and operated by Charles Smith into plaintiff's vehicle. As a result of this collision, plaintiff sustained injuries.
On February 23, 1984, plaintiff filed suit against Porche Brothers Lumber and Supply, Inc. (Porche Brothers), Transportation Insurance Company (Transportation Insurance), and Eugene Watson. The defendants filed third party demands against the Terrebonne Parish School Board and the State of Louisiana through the Department of Transportation and Development.[2]
After trial, judgment was rendered in favor of plaintiff, Harvey Smith, Jr., and against defendants Porche Brothers, Transportation Insurance, and Eugene Watson in the following amounts:
1) $6,941.69 for medical expenses;
2) $15,000.00 for general damages;
3) $30,464.52 for past lost wages;
4) $288,720.91 for future lost income; and,
5) Court costs and expert witness fees.
From this judgment, defendants appeal, alleging that the trial court erred in the following respects:
1) The awarding of future lost wages by the trial court; and
2) The awarding of past lost wages in the amount of $30,464.52 by the trial court.

LOSS OF PAST WAGES
Defendants contend that the trial judge erred in awarding $30,464.52 for past lost wages. Defendants reason that the record does not support this award. Defendants further contend that because plaintiff was examined by Dr. Rhymes on May 16, 1984, and because plaintiff failed to call Dr. Rhymes to testify, defendants are entitled to the presumption that Dr. Rhymes would have testified adversely to plaintiff.
At the time of the accident, plaintiff was employed as a welder by Raymond Fabricators. He was thirty years old and had been employed as a welder for the preceding eleven years.
The day following the accident, plaintiff was treated for pain in his neck, back, and shoulders by his family physician Dr. Leslie Walker. Dr. Walker performed x-rays and treated plaintiff conservatively for approximately one month, prescribing muscle relaxers, pain pills, and a neck brace.
Thereafter, on September 22, 1983, plaintiff was referred to Dr. Christopher E. Cenac, an orthopedic surgeon. Dr. Cenac's initial examination revealed objective evidence of muscle spasm in both the cervical and lumbar musclature and limitation of motion in lateral rotation in the cervical region and forward flexion in the lumbar region. The neurological and x-ray examinations, however, were normal. Dr. Cenac initially diagnosed acute cervical and lumbar soft tissue injury, namely cervical and lumbar strain.
Plaintiff was re-examined by Dr. Cenac on October 24, 1983, with complaints of persistent cervical pain, but diminished lumbar pain. On October 30, 1983, plaintiff was admitted to Terrebonne General Medical Center for a series of in-house studies, consisting of a CT scan of the cervical spine and a cervical and lumbar *415 myelogram. The results of both the CT scan and myelogram were normal. Plaintiff was discharged from Terrebonne General on November 10, 1983.
Plaintiff also saw Dr. Cenac on November 30, December 19, 1983, January 24, March 19, and March 26, 1984. On March 22, 1984, plaintiff underwent a bone scan at Terrebonne General, the results of which were normal. Dr. Cenac re-examined plaintiff again on April 25, May 16, July 12, and August 13, 1984.
On May 16, 1984, plaintiff was seen by Dr. Rhymes at the request of his employer, Raymond Fabricators.
Plaintiff was also referred to Dr. Hyman Robert Soboloff, another orthopedic surgeon, who examined plaintiff on July 31, 1984. Dr. Soboloff examined plaintiff and determined that plaintiff had no residual injury in the neck and back and that plaintiff was capable of returning to work at that time.
Dr. Cenac continued to see plaintiff on September 10, October 1, and October 29, 1984, at which time Dr. Cenac discharged plaintiff to return to work, although he felt that plaintiff was probably capable of returning to work in mid-1984. Throughout the fourteen month period, Dr. Cenac treated plaintiff conservatively with physical therapy and medication.
The testimony of Dr. Seymour S. Goodman, an economist, reflects that from the date of the accident to the date of trial, plaintiff had past lost wages of $30,464.52.
Defendants presented no evidence or testimony to controvert the evidence presented by plaintiff. The trial judge determined that plaintiff was entitled to past lost wages of $30,464.52.
In assessing damages in cases of quasi offenses, the judge is given much discretion. Perniciaro v. Brinch, 384 So.2d 392 (La.1980). Before an appellate court can disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused his much discretion in making the award. Perniciaro v. Brinch, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
In view of the testimony of Dr. Cenac and Dr. Goodman and the standard of review afforded us in the trial court verdict, we find that the record supports the trial judge's award for lost wages and that he did not abuse his discretion in making such award.

IMPAIRMENT OF EARNING CAPACITY AND LOSS OF FUTURE WAGES
Defendants contend that the trial judge erred in awarding $288,720.91 for loss of future income. Defendants reason that the record does not support the trial judge's award for loss of future earnings.
Awards for loss of future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. Thus, the court must exercise sound judicial discretion in determining these awards and render awards which are consistent with the record and which do not work an injustice on either party. Robinson v. Graves, 343 So.2d 147 (La.1977); Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2nd Cir.1984). A loss of future income award is not merely predicated upon the difference between a plaintiff's earnings before and after a disabling injury. Such an award is predicated upon the difference between a plaintiff's earning capacity before and after a disabling injury. Folse v. Fakouri, 371 So.2d 1120 (La.1979). Loss of future income awards thus encompass the loss of a plaintiff's earning potentialthe loss or reduction of a person's capability to do that for which he is equipped by nature, training, and experience and for which he may receive recompense. Coco v. Winston Industries Inc., supra; Naylor v. La. Dept. of Public Highways, 423 So.2d 674 (La.App. 1st Cir. 1982), writs denied, 427 So.2d 439, 429 So.2d 127, 134 (La.1983).
In determining an injured person's net economic loss caused by impairment *416 of earning capacity, one of the factors to be considered is the availability of reasonable employment opportunities for which the claimant is suited by education, experience and physical capacity. Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1st Cir.1983), writs denied, 433 So.2d 1056, 1057 (La. 1983). Other facts which may be considered in fixing awards of impairment of earning capacity are age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability, and the inflation factor. Unbehagen v. Bollinger Workover, Inc., 411 So.2d 507 (La.App. 1st Cir.1982). However, before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made by the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Coco v. Winston Industries, Inc., supra; Black v. Ebasco Services, Inc., 411 So.2d 1159 (La.App. 1st Cir.1982), writ denied, 414 So.2d 1253 (La.1982). Moreover, the appellate function in reviewing quantum is limited to raising inadequate awards to the lowest amount the trial court could have reasonably awarded, and lowering excessive awards to the highest amount the trial court could have reasonably awarded. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., supra.
In the case sub judice, the record establishes that plaintiff was employed as a welder for eleven years, has a high school education, and was employed periodically during and immediately after graduation from high school in retail clothing sales. The evidence also demonstrates that plaintiff was physically capable of returning to his former job as a welder or any other job as a welder or any other occupation on the date of trial and that plaintiff has no residual injury. However, the record also clearly establishes that as a result of the myelogram performed on November 8, 1983, plaintiff has some myelographic dye within the intraspinal canal. Because of the presence of this dye within the intraspinal canal, Dr. Cenac gave plaintiff a class five classification. A class five classification denotes to potential employers requiring pre-employment examinations that the applicant has significant health problems and is not recommended for employment.
At the time of the accident, plaintiff was employed as a welder earning $9.40 an hour and worked forty hours a week. At the time of trial, plaintiff was employed in an oilfield automotive store owned by his brother-in-law for $5.00 an hour. Dr. Goodman, an economist, testified that plaintiff's future lost wages totalled $288,720.91. In calculating plaintiff's lost wages, Dr. Goodman used a 27.9 year work life expectancy, a 7% rate of increase and a 10.625% discount rate. Dr. Goodman also assumed that plaintiff would continue his employment as a store clerk for $5.00 per hour.
The trial judge found that the plaintiff sustained future lost wages and awarded plaintiff $288,720.91.
Plaintiff is physically capable of returning to his former occupation as a welder. However, his earning capacity has been impaired to the extent that employers requiring pre-employment physical examinations will be discouraged from employing a man with a class five classification. After considering all of the above facts and the various factors for which there is evidence in the record, we are of the opinion that the highest award for loss of earning capacity, which was reasonably within the judge's discretion and is just and fair to both litigants and not unduly oppressive to either, is $100,000.00.

CONCLUSION
For the above reasons, the award for future wages rendered by the trial court is reduced to $100,000.00. In all other respects, *417 the judgment of the trial court is affirmed. The appellant is to pay all costs.
AMENDED AND AFFIRMED.
NOTES
[1] Transportation Insurance Company was erroneously referred to in the petition as CNA Insurance Company.
[2] The trial court granted directed verdicts on the third party demand and dismissed the claims against the Terrebonne Parish School Board and the State of Louisiana through the Department of Transportation and Development.