536 So.2d 639 (1988)
Howard G. PETERSON, et al.
v.
WESTERN WORLD INSURANCE COMPANY, et al.
No. CA 87 0964.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
Rehearing Denied February 9, 1989.
*641 Charest Thibaut, III, John S. Thibaut, Jr., Baton Rouge, for plaintiffs.
Kenneth E. Barnette, Baton Rouge, for defendants.
Before COVINGTON, C.J., and LOTTINGER, EDWARDS, CRAIN and FOIL, JJ.
LOTTINGER, Judge.
This action ex delicto arises from an accident on land leased by a private hunting club. From a judgment awarding plaintiffs $431,586.43, defendant appeals, and plaintiffs answered the appeal.

FACTS
On October 2, 1982, Howard G. Peterson and his son, Howard G. Peterson, Jr., plaintiffs in this matter, had arrived at a camp on land leased by the West Feliciana Hunting Club, Inc. to finish insulating the pipes on a water tank atop a thirty foot tower. The members had built the tower to furnish water for themselves and their dogs. The accident happened when Mr. Peterson, who was thirty-nine at the time of the accident, attempted to climb to the top floor of the structure by using crossbeams regularly spaced on the side. Without warning, the three nails holding a crossbeam to one of the support poles slipped out of their respective holes, and as a result, Mr. Peterson fell to the ground, landing on his feet. The force of the impact caused a severe compression fracture of the right ankle and a less severe compression fracture of the left heel and of the lumbar spine.
As a result of his injuries, Howard G. Peterson, individually and as administrator of the estate of his minor children, Howard G. Peterson, Jr., and Deanna Lynn Peterson, Mrs. Ruth Peterson, wife, and Dwanna Lisa Peterson, a major daughter, sued the hunting club and its insurer, Western World Insurance Company, for past and future pain and suffering, past and future medical expenses, and loss of consortium, wages, and earning capacity. Subsequent to the filing of this suit, Howard G. Peterson, Jr. became a major and was substituted as a party plaintiff. Plaintiffs later dismissed their suit against the hunting club, but reserved all rights against the insurer.

TRIAL COURT
Following a trial on the merits, the trial court rejected defendant's contention that it is protected by La.R.S. 9:2791[1] and *642 9:2795,[2] which limit liability of landowners who make their property available to the public for recreational purposes, and found defendant strictly liable for allowing the tower to fall into ruin.
In rejecting defendant's argument, the trial court referred to its reasons for denying defendant's motion for summary judgment. At that time it opined the intent of the legislature was to encourage landowners to make their property available to the public for recreational uses. By allowing only select individuals, i.e., members of a private, limited-membership hunting club, to enter the premises, the defendant fell outside of the class of persons the legislature wished to protect. Secondly, the trial court stated the injury-causing activity was not one of the recreational activities enumerated in the statute.
The trial court went on to award Mr. Peterson $150,000.00 for past pain and suffering, $250,000.00 for future pain and suffering, $6,586.43 for past medical expenses, and $25,000.00 for future medical expenses. *643 Defendant appealed, and plaintiffs answered the appeal.

ASSIGNMENTS OF ERROR
Defendant urges the trial court erred:
1) In failing to apply La.R.S. 9:2791 and 9:2795;
2) In awarding a future medical expense that is not supported by the evidence;
3) In awarding an excessive general damage award; and
4) In failing to find and apply comparative negligence or victim fault.

PLAINTIFFS' ANSWER
Plaintiffs answered, alleging the trial court erred:
1) In denying Mr. Peterson's claim for loss of past wages and future earning capacity; and
2) In denying recovery to the wife and children of Mr. Peterson for loss of consortium.

ASSIGNMENT OF ERROR NO. 1
Defendant argues it should be immune from liability under La.R.S. 9:2791 and 2795.
At the outset we note that La.R.S. 9:2791 and 2795 relate to the same subject matter. La.R.S. 9:2791 and 2795 were originally enacted as Act 248 of 1964 and 615 of 1975 respectively. Both acts intended to provide a limitation of tortious liability of landowners who allowed their property to be used for recreational purposes. Except for some stylistic differences, minor changes in phraseology, and enactment eleven years apart, both acts essentially accomplish the same purpose. Act 248 as it appears at La.R.S. 9:2791 has never been amended. However, Act 615 as it originally appeared at La.R.S. 9:2795 was twice amended in 1986.[3] Inasmuch as La.R.S. 9:2795 as enacted by Act 615 of 1975 was the later expression of legislative will and has been twice amended, we conclude that the legislature has impliedly expressed an intention that La.R.S. 9:2795 be controlling as between these two statutes.
Act 615 of 1975, § 1 (La.R.S. 9:2795) provides:
The purpose of this Act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.
Thus it is clear that the purpose of the act was to make land available to the public for recreational purposes. And to further said purposes, the liability of landowners was limited.
Owner is defined by the statute to mean "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." La.R.S. 9:2795 A(2). The statute does not define the extent of the term public; however, public has been defined as:
The whole body politic, or the aggregate of the citizens of a state, district, or municipality. The inhabitants of a state, county, or community. In one sense, everybody; and accordingly the body of the people at large; the community at large, without reference to the geographical limits of any corporation like a city, town, or county; the people. In another sense the word does not mean all the people, nor most of the people, nor very many of the people of a place, but so many of them as contradistinguishes them from a few. Accordingly, it has been defined or employed as meaning the inhabitants of a particular place; all the inhabitants of a particular place; the people of the neighborhood. Also, a part of the inhabitants of a community. (Citations omitted.) Black's Law dictionary 1393 (4th ed. 1951).
By statutory definition, West Feliciana Hunting Club, Inc., as "lessee," is considered the same as "owner." The remaining issue is whether the Club "membership" falls within the ambit of the term public as used in the statute. We must conclude it does not. We reach this conclusion by reasoning that the stated purpose *644 of encouraging the release of privately owned land for public recreational use is not accomplished when the "lessee" is a private club which restricts the use of the land to its members. Thus, as between Howard Peterson, as a member of the West Feliciana Hunting Club, Inc., and the hunting club, La.R.S. 9:2795 does not apply. Therefore, the trial judge was correct.

ASSIGNMENT OF ERROR NO. 2
Defendant urges the award of $25,000.00 in future medical expenses was not supported by the evidence. We disagree. Dr. John Loupe predicted a fusion will be required on the right ankle and that the left ankle may require fusion. He estimated a fusion costs $12,500.00 to $15,200.00.
An award for future medical expenses is by nature somewhat speculative. Recovery should not be denied because it is impossible to establish the nature, extent, and costs of the treatment which will be required. See Vial v. Armstrong, 479 So. 2d 583, 587 (La.App. 1st Cir.1985), writs denied, 481 So.2d 634, 481 So.2d 635 (La. 1986).

ASSIGNMENT OF ERROR NO. 3
Defendant argues the trial court abused its discretion in awarding $400,000.00 for past and future pain and suffering ($150,000.00 for past pain and suffering and $250,000.00 for future pain and suffering).
The trial court is awarded much discretion in awarding damages. Absent an initial determination the trial court has abused that discretion, a reviewing court should not disturb the trier's award. In the initial determination of an abuse, the examination of prior awards with facts and circumstances closely similar has a limited function. They may serve as an aid in such determination only where on an articulated basis, the present award is greatly disproportionate to the mass of themnot selected past awards. See Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
In the case at bar, Mr. Peterson was thirty-nine years old at the time of the accident. When he fell fifteen to twenty feet, he sustained a severe compression fracture of the right ankle, a fracture of the left heel, and a compression fracture of the lumbar spine. Mr. Peterson remained in the hospital seven days following surgery whereby four two-inch screws were implanted in his right ankle and casts were placed on both legs. Plaintiff was also given a brace for his back. For three weeks thereafter he was confined to bed. During the first week he was unable to sleep because of the pain in his legs. For the next few weeks he relied on a wheelchair. He used crutches another two or three weeks. During the first few weeks, he said the pain was so great he could not talk on the phone.
As of the trial, Mr. Peterson still had trouble getting out of bed in the morning and described how he must first crawl out of bed. His feet and back continue to hurt. He is unable to crawl, climb steps, stoop, bend or pick up objectstasks required in his work. His feet swell when he climbs stairs.
About seventeen months after the accident, Dr. John F. Loupe attempted to remove the screws from Mr. Peterson's ankle during a painful operation under local anesthesia. Due to the pain and the amount of dissection involved, Dr. Loupe was forced to abort the procedure.
Dr. Steven M. Wilson, an orthopedist asked to evaluate Mr. Peterson, concluded that Mr. Peterson has a twenty-five (25) percent permanent, partial disability, including a twenty-five (25) percent disability to the right lower extremity and twenty (20) percent permanent partial disability to the left lower extremity.
Dr. Loupe estimated Mr. Peterson has a thirty (30) to forty (40) percent permanent, total body disability with a forty (40) percent disability to his right lower extremity, ten (10) percent to his back, and ten (10) percent to his left lower extremity.
Dr. Loupe expects Mr. Peterson will require a bone fusion in his right ankle and may also need one in his left foot.
*645 Prior to the accident, Mr. Peterson jogged and played softball and volleyball, all of which he can no longer do.
Defendant suggests an appropriate award would be $150,000.00, and has cited a number of cases to support a reduction in the award to plaintiff in this case. However, all of those cases are distinguishable insofar as they involve considerably less severe injuries.
Conversely, as we review other awards for more similar injuries, we find the award to Mr. Peterson to be on the generous side, but it was not so unreasonably high as to constitute an abuse of discretion.

ASSIGNMENT OF ERROR NO. 4
Defendant argues the trial court erroneously concluded that comparative negligence or victim fault was not applicable.
In its reasons for judgment, the trial court cited Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166 (La.1985) as authority for the proposition that the application of comparative negligence in the instant case would be inappropriate in light of the goals of strict liability.
Bell involved a defective product and not a defective thing in one's custody. In Landry v. State, 495 So.2d 1284 (La.1986), the Louisiana Supreme Court reiterated its directive that courts should apply comparative negligence on a case by case basis. The primary inquiry, the court directed, is whether the application of comparative negligence would serve as an incentive for similarly situated plaintiffs to exercise care, while not reducing the incentive of the owner of the thing from removing a risk of harm. Landry, at 1290.
Assuming arguendo the application of comparative negligence is appropriate in the case before us, defendant still has the burden of proving that a reasonable man would not have done what plaintiff did.
Testimony revealed that Mr. Peterson used the same means of getting to the top as other club members, i.e., the crossbeams. Consequently, we find no evidence of victim fault, i.e., that plaintiff acted in an unreasonable manner.

PLAINTIFFS' ANSWER TO DEFENDANT'S APPEAL

ASSIGNMENT OF ERROR NO. 1
Plaintiffs urge the trial court erred in denying Mr. Peterson compensation for lost earnings and earning capacity, and claim the evidence justifies an award of $100,000.00.
Individual tax returns show Mr. Peterson earned approximately $31,000.00 in 1979, $27,000.00 in 1980, $38,000.00 in 1981, $29,600.00 in 1982 (year of accident), $31,000.00 in 1983, $36,000.00 in 1984, and $46,000.00 in 1985.
Inasmuch as there was no appreciable loss in earnings following the accident, we cannot say the trial court abused its discretion in not awarding Mr. Peterson any compensation for loss of past earnings.
However, loss of future earnings is based on lost earning capacity. Such an award is not predicated solely upon the difference between a plaintiff's earnings before and after the accident. Rather, it encompasses the reduction in a person's ability to do that for which he is equipped by nature, training, and experience and for which he may receive recompense. See Smith v. Porche Brothers Lumber and Supply, Inc., 491 So.2d 412, 415 (La.App. 1st Cir.1986). Among the facts to be considered in fixing such an award are age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, and the inflation factor. See Smith, at 416.
In the case before us, Mr. Peterson opened his air conditioning and refrigeration business in 1979. After the accident in 1982, Mr. Peterson was restricted in several ways. He can no longer engage in any physical work, nor does he work after hours to finish service calls. He testified the revenues from his after-hours work constituted his profit. His ability to make "estimate" calls is also restricted insofar as he is unable to go into attics, stoop, bend, pick up things, climb, or crawl. If he were *646 to hire someone to do the estimating, he testified it would cost him $18.00 per hour. He also testified he would have to pay a mechanic $17.00 an hour to do some of the mechanical work he stated he can no longer do.
While it is true that profits from Mr. Peterson's company have increased since the accident, that fact does not preclude an award for loss of earning capacity. See Rodgers v. National Dealer Services, Inc., 508 So.2d 1007, 1012 (La.App. 2d Cir.), writs denied, 512 So.2d 1183, 513 So.2d 1211 (La.1987).
Dr. Randy Rice, an economy expert, testified that Mr. Peterson, at the time of trial, had a work life expectancy of about seventeen (17) more years and that the present value of hiring someone at $17.00 per hour for that length of time, taking into consideration inflation and cost of living increases, would be $478,369.00.
An award for lost earning capacity is inherently speculative and cannot be calculated with absolute certainty. Thus the court must exercise sound discretion in rendering awards which are consistent with the record and which do not work an injustice on either party. See Smith, at 415.
After considering all of the above facts and factors to be considered when rendering an award for lost earning capacity, we are of the opinion that an award of $100,000.00 would be just and fair to both litigants and not unduly oppressive to either.

ASSIGNMENT OF ERROR NO. 2
Plaintiffs next argue the trial court erred in failing to award damages for loss of consortium.
In Finley v. Bass, 478 So.2d 608, 614 (La.App. 2d Cir.1985), the court separated the concept of consortium into seven component parts: love and affection, society and companionship, sexual relations, material services, support, aid and assistance, and felicity.
In the case at bar, Mr. and Mrs. Peterson both testified they were forced to abstain from sexual relations for about three months. All of the plaintiffs testified Mr. Peterson, formerly an easy-going person, became short tempered. He was also unable to play on his church's volleyball and softball teams with his family. Mrs. Peterson helped Mr. Peterson run the business and took care of the children by herself. During the first six weeks or so, someone had to be with Mr. Peterson all the time. For the first two or three weeks, Mr. Peterson was confined to bed, during which time Mrs. Peterson took care of him. The 13-year-old daughter would also help him out of bed in the morning. Mr. Peterson is now unable to coach his daughter's basketball team. Finally, the plaintiffs were forced to hire a house painter, whereas before the accident, Mr. Peterson would paint the house.
After considering all of the above facts, we are of the opinion that an award of $10,000.00 to Mrs. Ruth Peterson, $5,000.00 to Howard G. Peterson as administrator of the estate of the minor, Deanna Lynn Peterson, $5,000.00 to Howard G. Peterson, Jr. and $5,000.00 to Dwanna Lisa Peterson is a fair and just compensation for their loss of consortium.
Therefore, for the above and foregoing reasons, the judgment of the trial court is amended, and as amended is recast as follows with all costs of this appeal assessed to the defendant, Western World Insurance Company, as follows:
IT IS ORDERED, ADJUDGED AND DECREE that there be judgment herein in favor of Howard G. Peterson and against the defendant, Western World Insurance Company, in the following amounts:

Past medical expenses $ 6,586.43
Future medical expenses 25,000.00
Past pain and suffering 150,000.00
Future pain and suffering
 and permanent disability 250,000.00
Loss of earning capacity 100,000.00
 ___________
TOTAL $531,586.43

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the following plaintiffs and against the defendant, Western World Insurance Company, for the loss of consortium in the following amounts:

Mrs. Ruth Peterson $10,000.00

*647
Howard G. Peterson, as administrator
 of the estate
 of the minor Deanna
 Lynn Peterson $ 5,000.00
Howard G. Peterson, Jr. 5,000.00
Dwanna Lisa Peterson 5,000.00

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all sums awarded herein bear legal interest from date of judicial demand until paid, and all costs of this proceeding are to be paid by defendant, Western World Insurance Company. AMENDED, AND AS AMENDED, AFFIRMED.
FOIL, J., concurs in part and dissents in part. I would affirm the award as set by the trial judge.
EDWARDS, J., concurs in part and will assign reasons.
EDWARDS, Judge, concurring.
Under the specific facts of this case, I agree with the result.
Here, the plaintiff was injured due to a defect in a water tower structure built by the hunting club of which he was a member. I see nothing in the purpose of the immunity statute that is violated by not extending the immunity to this particular defendant (and its liability insurer). As between this member and his club, there is no relationship similar to an owner opening his hunting land to the public.
Additionally, it could be reasonably concluded that this type of "injurycausing instrumentality" is not the type normally encountered in the true outdoors. See Keelen v. State Dept. of Culture, Recreation, 463 So.2d 1287 (La.1985), (swimming pool) and Adams v. Hartford Acc. & Indem. Co., 525 So.2d 1211 (La.App. 1st Cir. 1988), (chain link fence around ball park).
I have no problem with the amount of damages, loss of earning capacity, etc., awarded by the majority, but I do have concern with the seemingly over-broad definition of the word "Public." I am not prepared to say that a landowner of rural hunting land who allows it to be used for hunting purposes, but who restricts it in a reasonable way loses his immunity under LSA-R.S. 9:2791, LSA-R.S. 9:2795. See also LSA-R.S. 9:3221.

ON APPLICATION FOR REHEARING.
Rehearing Denied.
Defendant, Western World Insurance Company, in applying for a rehearing, correctly points out that the judgment of this court should have been limited to the amount of insurance coverage, $500,000.00. Plaintiffs concur.
Therefore, considering said application and concurrence therein, the judgment rendered by this court is reformed to limit same as against Western World Insurance Company to the amount of $500,000.00 with legal interest thereon from date of judicial demand until paid.
Otherwise, the application for rehearing is denied.
NOTES
[1] La.R.S. 9:2791 provides:

A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to person or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
[2] La.R.S. 9:2795 provides:

A. As used in this Section:
(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of age.
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property incurred by such person.
(2) The provisions of this Subsection shall apply to owners of commercial recreational developments or facilities for injury to persons or property arising out of the commercial recreational activity permitted at the recreational development or facility that occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational activity commences, occurs, or terminates on the commercial recreational development or facility.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreation purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.
E. The limitation of liability provided in this Section shall apply to any lands or waterbottoms owned, leased, or managed by the Department of Wildlife and Fisheries, regardless of the purposes for which the land or waterbottoms are used, and whether they are used for recreational or nonrecreational purposes.
[3] La.R.S. 9:2795 was amended by Acts 967 and 976 of 1986.