542 So.2d 102 (1989)
Joey HENRY and Laurel Henry
v.
NATIONAL UNION FIRE INSURANCE COMPANY, Dolphin Services, Inc. and George Herpin.
No. CA 88 0061.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
Writs Denied June 2, 1989.
*103 Julius P. Hebert, Jr., Houma, for plaintiffs and appellants, Joey and Laurel Henry.
Frederick R. Campbell, New Orleans, for defendants and appellees, National Union Fire Ins. Co., et al.
Before CARTER, LANIER and LeBLANC, JJ.
LANIER, Judge.
This is a suit for damages in tort by a husband and wife which arises out of an automobile accident. The defendants stipulated liability, and the case went to trial on quantum. The trial judge rendered judgment awarding the wife $80,396.47 in damages and awarding the husband $5,000 for loss of consortium. The husband and wife took this devolutive appeal.

FACTS
On July 8, 1986, at approximately 6:35 a.m., Laurel Henry was operating her 1985 Nissan automobile on Tunnel Boulevard in the City of Houma, Terrebonne Parish, Louisiana. While stopped for a red light at the intersection of Tunnel Boulevard and Grand Caillou Road, her vehicle was struck from the rear by a 1985 Dodge van owned by Dolphin Services, Inc. (Dolphin) and driven by George Herpin. Herpin was an employee of Dolphin and was acting in the course and scope of his employment. National Union Fire Insurance Company was the insurer of Dolphin and Herpin.

GENERAL DAMAGES

(Assignment of Error 3)
The Henrys contend that the award of $65,000 made by the trial judge to Mrs. Henry for general damages was inadequate. They argue that this court should review the record de novo and increase Mrs. Henry's award to an "appropriate amount."
The standard usually used for appellate review of a trial court's award of damages is set forth in Reck v. Stevens, 373 So.2d 498, 501 (La.1979), as follows:
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
. . . .
Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much discretion," La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, *104 that the award may on appellate review, for articulated reason, be considered either excessive, ... or insufficient,.... Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries,....
However, absent an initial determination that the trial court's very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier's award. [Citations omitted.] [Footnote omitted.]
If an abuse of discretion is found, the appellate court will only lower the award to the highest (or raise the award to the lowest) point which is reasonably within the discretion afforded the court; the appellate court does not substitute its judgment for that of the trial court judge or jury in this situation. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). However, if the validity of a jury verdict or trial court judgment on quantum is interdicted by a factual or legal error, the abuse of discretion standard will not be followed, and the appellate court will not remand but will undertake an independent evaluation of the record and exercise its own discretion to fix a (de novo) quantum award, if the record is otherwise complete. Suhor v. Gusse, 388 So.2d 755 (La.1980). If the record is not complete, or if the weight of the evidence is nearly equal and a firsthand view of the witnesses is essential to a fair resolution of conflicting evidence, the case will be remanded for a new trial. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980).
There is no error of fact or law in the record to interdict the trial court's general damage award. Accordingly, we must examine the record to determine whether the trial judge abused his discretion in awarding general damages. If we find an abuse of discretion, the award must be increased to the minimum amount which was reasonably within the discretion of the trial court.
Following the accident, Mrs. Henry felt pain behind her left ear. The next day, she had neck pain, a headache, tingling and numbness down her right arm, and pain between her shoulder blades. She consulted Dr. Bruce Guidry. After examining and X-raying Mrs. Henry, Dr. Guidry diagnosed her condition as a cervical strain and prescribed medication. He also ordered a CAT scan to be conducted. The CAT scan revealed a one to two millimeter bulge at the C5-C6 level of the cervical spine. On August 11, 1986, because of continuing pain, Mrs. Henry went to see Dr. Donald Judice, a neurosurgeon. After performing an examination on Mrs. Henry and reviewing the CAT scan ordered by Dr. Guidry, his diagnosis was a bulging cervical disk at the C5-C6 level, cervical radiculopathy, and a cervical strain.
Mrs. Henry testified that she still has the same complaints she had the day after the accident, plus she now has numbness in her right cheek and chin, occasional momentary loss of balance when walking, weakness in her right arm, and her headaches seem to be increasing in severity. Because of pain, she can no longer go grocery shopping by herself and she cannot do household duties such as carrying the laundry basket and vacuuming. She is unable to jog, dance, swim, bowl, and do aerobics. Mrs. Henry stated that her injury has compromised her relationship with her husband and has affected her career as a nurse. She cannot perform certain nursing duties and will never be able to become a head nurse or supervisor. Mrs. Henry further testified that since the accident she is very depressed.
*105 Dr. Judice testified that he first saw Mrs. Henry on August 11, 1986, and has seen her approximately eight times since. He is currently treating her on an "as needed" basis for an indefinite period of time. After her initial visit, he treated Mrs. Henry conservatively with advice about neck care, neck exercises, repeated examinations, and medication only when absolutely necessary. He also recommended that she undergo physical therapy. He placed Mrs. Henry on the following restrictions: no working in the operating room or in areas where she had to physically manhandle patients, no lifting anything over 25 pounds, and no standing on her feet for eight hours straight without taking a break. On October 24, 1986, Dr. Judice ordered an MRI scan performed on Mrs. Henry. Dr. Judice testified that the MRI revealed posterior bulging of the C5-C6 and C6-C7 disks without herniation. His current medical opinion is that Mrs. Henry has two bulging disks at the C5-C6 and C6-C7 levels. She either has pressure on the nerve roots or damage to the nerve roots at the C-7 level on the right, or damage to the actual root itself. He stated that she does not have a "frankly herniated disk", and he plans to continue to treat her conservatively. He further testified that, at the present time, Mrs. Henry has an anatomical impairment of 10-12%. As a result of the accident, there is a 51% chance that Mrs. Henry will need cervical disk surgery at some point in her life. After surgery, her anatomical impairment will be approximately 25-30%.
After carefully reviewing all of the evidence, we conclude that the trial judge's award of $65,000 for general damages to Mrs. Henry falls within the range of discretion allowed to him. See, for example, Doming v. K-Mart Corporation, 540 So. 2d 400 (La.App. 1st Cir.1989); Wolfshohl v. Boudreaux, 482 So.2d 954 (La.App. 3rd Cir.1986).
This assignment of error is without merit.

LOSS OF FUTURE EARNINGS

(Assignment of Error 2)
The Henrys argue that the trial court erred as a matter of law in not awarding loss of future wages for the time when Mrs. Henry will have surgery and cannot work. The Henrys contend that, since the trial judge awarded Mrs. Henry damages for future surgery, he should have awarded her damages for loss of income while she is having, and recuperating from, the surgery.
The trial judge awarded Mrs. Henry damages for future medical expenses in the amount of $12,360. In his reasons for judgment, he stated that "more than likely she will need surgery in the future." The trial judge, however, did not award Mrs. Henry any damages for loss of future income.
It is plaintiff's burden to prove with legal certainty every item of damages claimed. Woodfield v. Dugas, 450 So.2d 1011 (La.App. 1st Cir.1984); Martin v. Cotton's Pest Aid Control of Baton Rouge, Inc., 424 So.2d 1216 (La.App. 1st Cir.1982). The proof of loss of future earnings must be with reasonable certainty. Thomas v. State Farm Insurance Co., 499 So.2d 562 (La.App. 2nd Cir.1986), writs denied, 501 So.2d 213 and 215 (La.1987); Roe v. Somerson, 419 So.2d 1249 (La.App. 1st Cir.), writ denied, 421 So.2d 251 (La.1982).
After reviewing the record, we find that the trial judge did not err in failing to award damages for future loss of wages. Dr. Judice testified that Mrs. Henry probably will live another 60 years, and there is a 51% chance that she will have to undergo surgery at some point in her life as a result of the accident. However, he further stated that he had no immediate plans for surgery for Mrs. Henry and was unable to predict at what point in the future surgery might be necessary.
Dr. Seymore Goodman, an economist whose report was submitted into evidence in lieu of his testimony, noted in his report that on the day of the trial Mrs. Henry was 22 years old and had a work life expectancy of 28.5 years. There is no evidence in the record to show that Mrs. Henry will have to undergo surgery during her work life. Since her life expectancy was 60 years and *106 her work life expectancy was only 28.5 years, she could have the operation during the 31.5 years of her remaining life when she was not working.
This assignment of error is without merit.

LOSS OF EARNING CAPACITY

(Assignment of Error 1)
The Henrys argue that the trial court erred in failing to award Mrs. Henry damages for loss of earning capacity.
In his reasons for judgment, the trial judge stated, in pertinent part, the following:
As a result of the accident, Plaintiff has restrictions that do affect her ability to work in all areas of the nursing profession. Yet, she has been employed at South Louisiana Medical Center (SLMC) since the day of the accident and there have been no complaints about her work performance. In Plaintiff's own testimony she stated that she is presently making the highest wage possible for a registered nurse [II] at SLMC with her educational background and experience. She has also earned two raises and a promotion since the date of the accident. Additionally, she is entitled to an annual merit raise hereinafter. Therefore, any award for future loss of earnings is mere speculation. The fact that the Plaintiff had the potential to become some type of supervisor or head nurse is not sufficient to make an award for future loss of earning capacity. [Emphasis added.]
A loss of future income award is not predicated merely upon the difference between a plaintiff's earnings before and after a disabling injury, but also encompasses the loss of one's earning potential or capacity, that is, the loss or reduction of a person's capability to do that for which he is equipped by nature, training and experience, and for which he may receive recompense. Landry v. State Farm Insurance Company, 529 So.2d 417 (La.App. 1st Cir.1988); Smith v. Porche Brothers Lumber and Supply, Inc., 491 So.2d 412 (La.App. 1st Cir.1986). Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured person could have earned despite the fact he may never have seen fit to take advantage of that capacity, if the injury has deprived him of a capacity he would have been entitled to enjoy, even though he never profited from it. Folse v. Fakouri, 371 So.2d 1120 (La.1979).
The facts show that, at the time of the accident, Mrs. Henry was working as a Registered Nurse-1 at South Louisiana Medical Center in Houma, Louisiana, and was earning $10.05 an hour. At the time of trial, Mrs. Henry was earning $11.04 an hour and was classified as a Registered Nurse-2. Mrs. Henry testified that there are Registered Nurse-3 and Registered Nurse-4 levels, which are head nurse and supervisor positions. She will never be able to advance to these levels because of her injuries from the accident. To become a head nurse or supervisor, a nurse must have experience in all areas of nursing. Because of her injuries and the restrictions placed on her by Dr. Judice, she is unable to perform nursing in the areas of orthopedics, pediatrics, operating room nursing, and home health nursing. She is also unable to do group or moonlighting nursing. Mrs. Henry further testified that she graduated second in her class from Charity School of Nursing and has always wanted to be a nurse. Since the accident and because of her injuries, she feels that she cannot fulfill her potential as a nurse.
Dr. Judice testified that the restrictions he placed on Mrs. Henry would take her away from certain areas of nursing, such as pediatric nursing and orthopedic nursing. If Mrs. Henry does require surgery, there will be more restrictions placed on her. Until surgery is required, the restrictions he has recommended remain firm.
Jennifer Palmer, a vocational rehabilitation counselor, testified on behalf of the Henrys that she interviewed Mrs. Henry to determine her loss of earning capacity. Prior to the accident, Mrs. Henry had the potential and ability to work in all areas of nursing. After the accident and with the *107 restrictions placed on Mrs. Henry by Dr. Judice, she now has a very narrow range of options. She is unable to work and gain experience in different departments of nursing which would allow her to move up or be promoted into better positions. Mrs. Palmer further stated that given Mrs. Henry's background, she is an achievement oriented person. Had she not been injured, she would have been in the top 10% of all nurses. Absent her injury, five years after becoming a nurse, Mrs. Henry should have been earning $31,000 a year. Mrs. Palmer also noted that Mrs. Henry cannot perform 92% of the jobs that had been available to her prior to the accident.
The facts show that Mrs. Henry suffered a loss of earning capacity as a result of the accident. The trial court erred as a matter of law by ruling that loss of earning capacity was not a compensable element of damages. Folse v. Fakouri.
The trial court made no award for loss of earning capacity because it found as a matter of law that such an award was speculative and not compensable. Since the record is complete on this issue, rather than remand for a trial court quantum award, in the interest of judicial economy we will proceed to fix a de novo quantum award. Bridevaux v. Marchand, 543 So.2d 930 (La.App. 1st Cir.1989).
An award for loss of earning capacity is inherently speculative and cannot be calculated with absolute certainty. The most the courts can do is exercise sound discretion and make an award that in light of all facts and circumstances is fair to both parties while not being unduly oppressive to either. Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3rd Cir.1985); Unbehagen v. Bollinger Workover, Inc., 411 So.2d 507 (La.App. 1st Cir. 1982). Factors to be considered in fixing awards for loss of earning capacity include: age, life expectancy, work life expectancy, appropriate discount rate, the annual wage rate increase or productivity increase, prospects for rehabilitation, probable future earning capacity, loss of earning ability, and the inflation factor or decreasing purchasing power of the applicable currency. Brown v. DSI Transports, Inc., 496 So.2d 478 (La.App. 1st Cir.), writ denied, 498 So.2d 18 (La.1986); Smith v. Porche Brothers Lumber and Supply, Inc., 491 So.2d at 416; Unbehagen v. Bollinger Workover, Inc., 411 So.2d at 508-509.
Dr. Goodman, an expert economist, calculated Mrs. Henry's loss of lifetime earning capacity in a report dated July 20, 1987, which was filed in evidence in lieu of his live testimony. His calculations were based on actual income on August 5, 1987 (the date of trial) of $22,200 and a potential income on that same date of $31,000, which showed (to Dr. Goodman) a loss of earning capacity in 1987 of $8,800. Dr. Goodman determined Mrs. Henry's work life expectancy at 28.5 additional years from the date of trial. He used a 9¼% per annum discount rate and a 7.42% estimated annual growth rate for earnings. Using these figures, he calculated Mrs. Henry's loss of earning capacity at $176,613.73. The defendants presented no expert testimony on loss of earning capacity.
The Louisiana Supreme Court has specifically ruled that "impairment of earning capacity cannot be calculated with mathematical certainty, and sound judicial discretion must be exercised after all proper considerations are weighed." Philippe v. Browning Arms Company, 395 So.2d 310, 317 (La.1980). Although the testimony of an expert economist is entitled to weight, it is necessarily based on uncertain future events and is not conclusive. Cutchall v. Great American Pump Company, 460 So. 2d 1106 (La.App. 2nd Cir.1984). Further, Dr. Goodman erroneously assumed that Mrs. Henry had the potential for making $31,000 as of the date of trial. Mrs. Henry graduated from nursing school in May of 1986, the accident occurred on July 8, 1986, and the trial was held on August 5, 1987. Jennifer Palmer, the vocational specialist, did not testify that Mrs. Henry could have made $31,000 per annum on August 5, 1987; she testified that Mrs. Henry had the capacity of earning $31,000 per annum "within five years after graduation."
*108 After weighing all proper considerations, we exercise our discretion and fix Mrs. Henry's loss of earning capacity award at $100,000. See, for example, Hunt v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 522 So.2d 1144 (La.App. 2nd Cir.1988); Rodgers v. National Dealer Services, Inc., 508 So.2d 1007 (La.App. 2nd Cir.), writs denied, 512 So.2d 1183 (La. 1987) and 513 So.2d 1211 (La.1987); Smith, 491 So.2d at 416; Klein v. Himbert, 474 So.2d 513 (La.App. 4th Cir.1985).
This assignment of error has merit.

DECREE
For the foregoing reasons, the judgment of the trial court is amended to increase the award in favor of Mrs. Henry to $180,396.47. In all other respects, the judgment of the trial court is affirmed. The defendants are cast for the cost of this appeal.
AMENDED AND AFFIRMED.